# EXHIBIT B

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

STATE OF RHODE ISLAND             SUPERIOR COURT
KENT COUNTY

RYAN CORDEIRO
ASHLEY CORDEIRO

      VS.

CARRINGTON MORTGAGE SERVICES, LLC
KORDE & ASSOCIATES, PC

<u>COMPLAINT</u>

Plaintiff complains of Defendants as follows:

1.     Plaintiff, Ryan Cordeiro is an individual residing at 38 Rock Street,

Tiverton, Rhode Island.  Plaintiff, Ashley Cordeiro is an individual residing at 38

Rock Street, Tiverton, Rhode Island.

2.     Defendant, Carrington Mortgage Services, LLC ("Carrington") is a

Delaware limited liability company, with a business address of 1600 South

Douglas Road, Suite 200-A, Anaheim, California 92806.

3.     Defendant, Korde & Associates, P.C. ("Korde") is a Massachusetts

professional corporation, with an office located at 900 Chelmsford Street, Suite

3102, Lowell, MA 01851-8100.

4.     On or about  June 22, 2009, Plaintiff delivered a mortgage to

Bank of America, N.A. A copy is attached as Exhibit A.

5.     On or about June 22, 2009, Plaintiff  executed a promissory note

1

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

payable to Bank of America, N.A. in the amount of $169,800.00. A copy is

attached as Exhibit B.

6.      This Court  jurisdiction pursuant to the provisions of the Fair Debt

Collection Practices Act, the Truth in Lending Act, the Real Estate Settlement and

Procedures Act and the provisions of R.I.G.L.§19-14.11-4.

7.      This Court has personal jurisdiction over the Defendants, which both do

business in Rhode Island.

8.      Carrington claims to be the owner of the Plaintiff's mortgage and note.

9.      The primary business of Korde is the collection of debts.  Korde collects

debts for mortgagees in nonjudicial foreclosures, judicial foreclosures, eviction

actions, providing payoff statements and reinstatement statements to consumer

homeowners to cause them to make payments to it on behalf of creditors, filing

proofs of claim in bankruptcy and litigation designed to collect funds for creditors

from consumers.

10.     As a result the principal business of Korde is not the enforcement of security

instruments through nonjudicial foreclosure.

11.     Korde is a default service provider and is the Rhode Island affiliate of The

Logs Group, LLC, which provides debt collection services for mortgagees and loan

servicers.

2

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

12.     Any charges by Korde for legal services to creditors are billed by The Logs

Group, LLC and paid to that entity's billing address in the State of Illinois.


## COUNT I

**BREACH OF CONTRACT AND FAILURE TO COMPLY WITH
CONDITIONS PRECEDENT TO EXERCISE THE STATUTORY POWER
OF SALE BY NOT COMPLYING WITH THE REGULATIONS OF THE
SECERTARY OF HOUSING AND URBAN DEVELOPMENT WHICH
APPLY TO PLAINTIFF'S FHA MORTGAGE**

13.     Paragraphs 1-13 are incorporated by reference.

14.     Korde on May 4, 2018, deceptively and without identifying the owner or the

mortgage, mailed the Plaintiff a Notice of Sale, pursuant to R.I.G.L §34-27-4 and

scheduled a foreclosure sale for June 28, 2018. A copy is attached as Exhibit C.

15.     Plaintiff's mortgage is an FHA mortgage as indicated by the attached

Exhibit A.

16.     The provisions of the mortgage in relation to declaration of default and

acceleration were not  complied with by the owner of the note and mortgage.

17.     Before any alleged acceleration of the loan was declared, the Lender, or its

assignee, was required to comply with the terms of the mortgage.

18.     Paragraph 9 of the Plaintiff's Mortgage did not authorize acceleration or

foreclosure if not permitted by the Secretary of the Secretary of Housing and

Urban Development.

3

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

19.    These regulations provide that the mortgagee must have a face to face

meeting with the mortgagor, or make a reasonable effort to arrange such a meeting,

before three full monthly installments due on the mortgage are unpaid.

20.    No such face to face meeting occurred nor was attempted nor

scheduled.

21.    Carrington never sent an employee or agent to the Plaintiff's home in order

to have a face to face meeting with the Plaintiff to discuss loss mitigation options.

22.    The policy of Carrington from 2014 to the present has always been to hire

independent contractors, such as National Credit Connections, Inc. to deliver a

previously mailed letter to homeowners and advise them to contact Carrington

regarding a face to face meeting.

23.    National Creditors Connection, Inc. is field service and property inspection

firm. It does not have employees who go to homes. Rather it hires regional

vendors, whose employees have limits on what they can do regarding loss

mitigation.

24.    NCCI limits what vendor's field representatives can do during home Visits.

Field representatives are not allowed to enter borrowers' homes. They may not

answer questions about loss mitigation or about borrowers' mortgages; instead,

they must refer borrowers to the loan servicer or mortgagee to answer any

4

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

questions. NCCI does not collect or receive payment, discuss payment options or plans, or analyze borrowers' financial information.

25.     The HUD regulations require that at least one visit to the Plaintiff's home was required by Carrington Loss Mitigation representative to interview the homeowner and discuss loss mitigation options with him.

26.     No representative of Carrington came to Plaintiff's home to discuss loss mitigation options with him.

27.     Thus this regulation was not complied with by any mortgagee before an alleged acceleration of the loan was declared.

28.     In order to accelerate and exercise the statutory power of sale, the mortgagee was required to comply with 24 CFR §203.604., which provides:

> 203.604
> Contact with the mortgagor.
> (a) [Reserved]
> (b) **The mortgagee must have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid.**
> ( **emphasis added** ) If default occurs in a repayment plan arranged other than during a personal interview, the mortgagee must have a face-to-face meeting with the mortgagor, or make a reasonable attempt to arrange such a meeting within 30 days after such default and at least 30 days before foreclosure is commenced, or at least 30 days before assignment is requested if the mortgage is insured on Hawaiian home land pursuant to section 247 or Indian land pursuant to section 248 or if assignment is requested under § 203.350(d) for mortgages authorized by section 203(q) of the National Housing Act.
> (c) A face-to-face meeting is not required if:

5

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

(1) The mortgagor does not reside in the mortgaged property,

(2) The mortgaged property is not within 200 miles of the mortgagee, its servicer, or a branch office of either,

(3) The mortgagor has clearly indicated that he will not cooperate in the interview,

(4) A repayment plan consistent with the mortgagor's circumstances is entered into to bring the mortgagor's account current thus making a meeting unnecessary, and payments thereunder are current, or

(5) A reasonable effort to arrange a meeting is unsuccessful.

(d) A reasonable effort to arrange a face-to-face meeting with the mortgagor shall consist at a minimum of one letter sent to the mortgagor certified by the Postal Service as having been dispatched. Such a reasonable effort to arrange a face-to-face meeting shall also include at least one trip to see the mortgagor at the mortgaged property, unless the mortgaged property is more than,200 miles from the mortgagee, its servicer, or a branch office of either, or it is known that the mortgagor is not residing in the mortgaged property.

(e) (1) For mortgages insured pursuant to section 248 of the National Housing Act, the provisions of paragraphs (b), (c) and (d) of this section are applicable, except that a face-to-face meeting with the mortgagor is required, and a reasonable effort to arrange such a meeting shall include at least one trip to see the mortgagor at the mortgaged property, notwithstanding that such property is more than 200 miles from the mortgagee, its servicer, or a branch office of either. In addition, the mortgagee must document that it has made at least one telephone call to the mortgagor for the purpose of trying to arrange a face-to-face interview. The mortgagee may appoint an agent to perform its responsibilities under this paragraph.

(2) The mortgagee must also:

(i) Inform the mortgagor that HUD will make information regarding the status and payment history of the mortgagor's loan available to local credit bureaus and prospective creditors;

(ii) Inform the mortgagor of other available assistance, if any;

(iii) Inform the mortgagor of the names and addresses of HUD officials to whom further communications may be addressed.

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

29.    Specifically the provisions in paragraph 9 of the mortgage were a condition precedent to the exercise of the power of sale of the mortgage.

30.    Plaintiff's mortgage incorporated the HUD regulations, which required a face to face meeting before declaration of default and acceleration.

31.    Carrington did not comply with the terms of the mortgage to exercise the statutory power of sale as indicated above.

32.    Plaintiff was not provided the opportunity to have a face to face meeting with Carrington.

33.    Carrington has offices within 200 miles of Plaintiff's home.

34.    No fact to face meeting was scheduled for Plaintiff by Carrington or any loan servicer or any owner of this mortgage note.

35.    No default letter or acceleration was sent to Plaintiff after a face to face meeting with Carrington had occurred or which had been scheduled by Carrington and had been rejected by Plaintiff.

36.    As a result, Carrington could not exercise the statutory power of sale.

37.    Due to this failure to comply with the terms of the mortgage, no entity was contractually authorized to exercise the statutory power of sale and foreclose on Plaintiff's mortgage.

38.    The HUD Regulations, which were incorporated into the terms of the

7

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

mortgage also required, prior to declaration of any default or acceleration of the

note, that the mortgagor be provided information on all loss mitigation options.

39.    Carrington, prior to declaration of default, was required to offer and

communicate with the Plaintiff regarding the loss mitigation options indicated in

the Regulations, which were the following:

a.    Deeds in lieu of foreclosure
b.    preforclosure sales
c.    assumptions
d.    special forebearance
e.    recasting of mortgages
f.    partial claims


40.    These requirements are located in the Code of Federal Regulations,

which provide:

**203.605 Loss mitigation performance.**

**(a)***Duty to mitigate.* Before four full monthly installments due on
the mortgage have become unpaid, the mortgagee **shall** evaluate on a monthly
basis all of the loss mitigation techniques provided at § 203.501 to determine
which is appropriate. Based upon such evaluations, the mortgagee shall take the
appropriate loss mitigation action. Documentation must be maintained for the
initial and all subsequent evaluations and resulting loss mitigation actions. Should
a claim for mortgage insurance benefits later be filed, the mortgagee shall maintain
this documentation in the claim review file under the requirements of § 203.365(c).

**(b)***Assessment of mortgagee's loss mitigation performance.*

**(1)** HUD will measure and advise mortgagees of their loss mitigation
performance through the Tier Ranking System (TRS). Under the TRS, HUD will
analyze each mortgagee's loss mitigation efforts portfolio-wide on a quarterly
basis, based on 12 months of performance, by computing ratios involving loss
mitigation attempts, defaults, and claims. Based on the ratios, HUD will
group mortgagees in four tiers (Tiers 1, 2, 3, and 4), with Tier 1 representing the

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

highest or best ranking <u>mortgagees</u> and Tier 4 representing the lowest or least satisfactory ranking <u>mortgagees</u>. The precise methodology for calculating the TRS ratios and for determining the tier stratification (or cutoff points) will be provided through Federal Register notice. Notice of future TRS methodology or stratification changes will be published in the Federal Register and will provide a 30-day public comment period.

**(2)** Before HUD issues each quarterly TRS notice, HUD will review the number of claims paid to the <u>mortgagee</u>. If HUD determines that the <u>lender</u>'s low TRS score is the result of a small number of <u>defaults</u>or a small number of foreclosure claims, or both, as defined by notice, HUD may determine not to designate the <u>mortgagee</u> as Tier 3 or Tier 4, and the <u>mortgagee</u> will remain unranked.

**(3)** Within 30 calendar days after the date of the TRS notice, a <u>mortgagee</u> that scored in Tier 4 may appeal its ranking to the Deputy Assistant <u>Secretary</u> for Single Family or the Deputy Assistant <u>Secretary</u>'s designee and request an informal HUD conference. The only basis for appeal by the Tier 4 <u>mortgagee</u> is disagreement with the data used by HUD to calculate the <u>mortgagee</u>'s ranking. If HUD determines that the <u>mortgagee</u>'s Tier 4 ranking was based on incorrect or incomplete data, the <u>mortgagee</u>'s performance will be recalculated and the <u>mortgagee</u> will receive a corrected tier ranking score.

**(c)***Assessment of civil money penalty.* A <u>mortgagee</u> that is found to have failed to engage in loss mitigation as required under <u>paragraph (a)</u> of this section shall be liable for a civil money penalty as provided in <u>§ 30.35(c)</u> of this title.

41.    Prior to transmitting a default notice or accelerating the mortgage

loan, Carrington  did not provide to the Plaintiff or discuss with the Plaintiff any of

the loss mitigation options pursuant to 24 CFR 203.51, which provides:

**§ 203.501 Loss mitigation.**

Mortgagees must consider the comparative effects of their elective servicing actions, and must take those appropriate actions which can reasonably be expected to generate the smallest financial loss to the Department. Such actions include, but are not limited to, deeds in lieu of foreclosure under <u>§ 203.357</u>, pre-foreclosure sales under <u>§ 203.370</u>, partial claims under <u>§ 203.414</u>, assumptions under <u>§ 203.512</u>, special forbearance under <u>§§ 203.471</u> and 203.614, and recasting of <u>mortgages</u> under <u>§ 203.616</u>. HUD may prescribe conditions and requirements for the appropriate use of these loss mitigation actions, concerning such matters

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

as <u>owner</u>-occupancy, extent of previous defaults, prior use of loss mitigation, and evaluation of the mortgagor's income, credit and property.

42.    On June 28, 2018, despite the failure to comply with the terms of the mortgage, Defendant, through its attorney, Korde claims to have conducted a foreclosure sale on behalf of Carrington.

43.    At this sale the Defendant claims to have purchased the property pursuant to a purported Foreclosure Deed, which was recorded in the Land Evidence Records of the Town of Tiverton on August 6, 2018 in Book 1686 Page 44.

44.    A copy of the purported  foreclosure deed is attached as Exhibit D.

45.    Plaintiff's FHA mortgage incorporated the HUD regulations, which required a face to face meeting and advising Plaintiff of all loss mitigation options before sending the Plaintiff a default and acceleration notice.

46.    There was no compliance with the HUD Regulations to exercise the statutory power of sale as indicated above.

47.    Carrington did not comply with the HUD regulations and did not thus provide Plaintiff the opportunity to have a face to face meeting, prior to declaring default and accelerating the mortgage loan.

48.    Carrington did not comply with the HUD regulations and did not provide the Plaintiff with all loss mitigation options, prior to its purported declaration of default and acceleration of the mortgage loan.

10

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

50.     No default letter or acceleration letter was sent to Plaintiff after a face to face

meeting and after Carrington had explained to Plaintiff all loss mitigation options

available to the Plaintiff as required by the HUD regulations.

51.     Due to this failure to comply with the HUD Regulations, no entity was

contractually authorized to exercise the statutory power of sale and foreclose on

the Plaintiff's mortgage.

52.     As a result of the improper and invalid attempt to exercise of the statutory

power of sale and a purported  foreclosure sale due to the failure to comply with

the HUD regulations, Plaintiff's  mortgage loan account was charged fees and

costs and expenses for certified mail, advertising costs, legal fees, auctioneer costs

and other improper charges.

53.     Plaintiff lives in the property with his family.  He has also incurred

emotional injuries and damages due to the improper alleged foreclosure on his

home without complying with the terms of the mortgage.

54.     Due to the foreclosure and subsequent eviction actions against him, he has

been worried about being evicted from his home and is concerned for his family's

health and welfare. This has caused him to lose sleep and suffer emotional distress

due to the actions of the Defendant.

55.     Plaintiff has  hired  an attorney, in regard to the improper action of

Carrington, which sent him a Notice of Foreclosure sale and  is seeking to evict

11

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

him, after having claimed to have conducted a sale without having complied with the HUD regulations and the terms of the mortgage.

56.     Plaintiff has incurred legal fees for the prosecution of this action as a result of the breach of contract by Carrington. The actions of Carrington were a breach of the covenant of good faith and dealing and were willful, wanton and reckless, warranting the imposition of punitive damages.

57.     Pursuant to the provisions of R.I.G.L §9-1-45, Plaintiff is entitled to attorney fees for this breach of contract.

58.     There was no justiciable basis in law or fact for the exercise of the statutory power of sale without complying with the terms of the mortgage.

WHEREFORE, Plaintiff demands Judgment against Carrington for actual and compensatory damages and punitive damages arising from the breach of contract and covenant of good faith and dealing by Carrington along with legal fees and costs and legal fees pursuant to R.I.G.L.§ 9-1-45 for breach of contract.

RYAN CORDEIRO
By his Attorney

May 2, 2019

/s/ John B. Ennis
JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, RI 02920
(401) 943-9230
Jbelaw75@gmail.com

12

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

## COUNT II

## CLAIM FOR DECLARATORY JUDGMENT

59.    Paragraphs 1-58 are incorporated by reference.

60.    This Court has jurisdiction pursuant to R.I.G.L.§ 9-30-1 et seq. to issue Declaratory Judgments regarding the rights of parties to contracts and to interpret such contracts.

61.    The failure of Carrington to comply with the HUD regulations incorporated into the terms of the Plaintiff's mortgage rendered the purported foreclosure void.

62.    As a result the purported foreclosure deed recorded in the Town of Tiverton should be vacated and rescinded.

63.    This Court has the power to declare that the aforementioned deed to be void and without any effect.

Wherefore Plaintiff demands that this Court issue a Declaratory Judgment declaring that the purported Foreclosure Deed, which were recorded in the Land Evidence Records of the Town of Tiverton on August 6, 2018 in Book 1686 Page 44 is null and void and to grant all other just and proper relief including attorney fees and costs.

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

RYAN CORDEIRO
By his Attorney
/s/ John B. Ennis

May 2, 2019

JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, RI 02920
(401) 943-9230
Jbelaw75@gmail.com

## COUNT III

### INJUNCTIVE RELIEF

65.    Paragraphs 1-64 are incorporated by reference.

66.    Plaintiff will be irreparably harmed if Defendant's improper exercise of the statutory power of sale without complying with the HUD regulations and is not voided and Defendant is allowed to obtain title to Plaintiff's home and is allowed to evict Plaintiff from his home despite the improper foreclosure sale of the Plaintiff's home.

67.    Plaintiff has a substantial likelihood of success in the pending action, would otherwise suffer irreparable harm and can claim the greater hardship in the absence of an order, which will not disserve the public interest if imposed.

68.    The failure of the Defendant to comply with the HUD regulations renders void the alleged foreclosure by Statutory Power of Sale, without having the contractual ability.

69.    Plaintiff lives in this property, as his residence with his family.

70.    These facts demonstrate that Plaintiff has a substantial

14

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

likelihood of success. Likewise a foreclosure of Plaintiff's property by a party not

entitled to foreclose on the property will cause Plaintiff irreparable harm, which

hardship is greater than any hardship, which may be claimed by defendant.

71.     Such relief sought by Plaintiff will not disserve the public interest if

imposed.

72.     Since there has been no compliance with the HUD regulations requiring a

Face to Face meeting and an explanation of all loss mitigation options as a

prerequisite to the declaration of default, any alleged foreclosure is void

73.     Plaintiff has incurred legal fees and expenses due to the conduct

of the Defendant in not complying with the provisions of the HUD regulations.

WHEREFORE, Plaintiff demands that this Court:

    a.  Declare that all actions of the Defendant in attempting to foreclose
on the Plaintiff's property, without complying with the provisions
of the HUD regulations incorporated into the terms of the mortgage
are void.

    b.  Declare that the Plaintiff is entitled to a face to face meeting and
explanation of all loss mitigation options, prior to the declaration of
default and acceleration of the mortgage loan.

    c.  Grant a Preliminary Injunction Restraining and Enjoining
Carrington and any other entity acting on its behalf from taking any
action to evict the Plaintiff from his home at 38 Rock Street,
Tiverton, Rhode Island pending a hearing on a Permanent
Injunction

    d.  Grant a Temporary Restraining Order and Permanent and
Mandatory Injunction against Carrington and any other entity
acting on its behalf to comply with the HUD Regulations and the
terms of the mortgage and provide the Plaintiff a face to face

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

meeting and provide all loss mitigation options before attempting to declare the Plaintiff's mortgage loan in default or accelerate the mortgage loan.

(e) Restrain and enjoin Carrington from taking any action in regard to the eviction against the Plaintiff.

(f) Grant all other just and proper relief.

RYAN CORDEIRO

By his Attorney
/s/ John B. Ennis
JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, RI 02920
(401) 943-9230
Jbelaw75@gmail.com

May 2, 2019

## COUNT IV

**VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT BY KORDE & ASSOCIATES, P.C. PURSUANT TO 15 U.S.C. §1692e(5) and 15 U.S.C. §1692f(6)**

74.  Paragraphs 1-73 are incorporated by reference.

75.  Korde is a debt collector as defined by 15 USC 1692 et seq.

76.  The primary business of Korde is the collection of debts.

77.  Korde regularly collects debts for other entities.  In fact it regularly references itself as a Debt Collector and has referenced itself as a debt collector in its communications with the Plaintiff.

16

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

78.     The vast majority of the business of Korde is as a Debt Collector. It has

access to a computer software system whereby it is able to act as a default servicer

provider for a loan servicer such as Carrington and  seeks to collect payments on

past due mortgages for loan servicers such as Carrington.

79.     The primary business of Korde is the collection of debts.

80.     Korde collects debts for mortgagees in nonjudicial foreclosures, judicial

foreclosures, eviction actions, providing payoff statements and reinstatement

statements to consumer homeowners to cause them to make payments to it on

behalf of creditors, filing proofs of claim in bankruptcy and litigation designed to

collect funds for creditors from consumers.

81.     As a result the principal business of Korde is not the enforcement of security

instruments through nonjudicial foreclosure.

82.     Korde is a default service provider and is the Rhode Island affiliate of The

Logs Group, LLC, which provides debt collection services for mortgagees and loan

servicers.

83.     Any charges by Korde for legal services to creditors are billed by The Logs

Group, LLC and paid to that entity's billing address in the State of Illinois.

84.     Korde threatened to commence a non-judicial foreclosure to effect

dispossession of the Plaintiff  of his property even though  Carrington had not

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

complied with the HUD regulations and was not entitled to accelerate the

mortgage loan and exercise the statutory power of sale.

85.    Carrington lacked the present right to possession of the property claimed as

collateral through an enforceable security interest.

86.    Korde thus on May 4, 2018 mailed a Notice of Sale to Plaintiff pursuant to

R.I.G.L. §34-27-4 by certified mail and by regular mail.

87.    The purpose of this letter was to coerce the Plaintiff to pay his mortgage

arrearage to Carrington.

88.    In this letter, Korde suggested that Plaintiff call its office regarding the

matter in an attempt to coerce Plaintiff to pay the arrearage on the mortgage loan to

Carrington.

89.    Whenever a phone call is made to Korde at its office number, 978-256-1500,

a recorded message is given to the caller advising that pursuant to the Fair Debt

Collection Practices Acct that a portion of the law practice of Korde is debt

collection and that any information obtained will be used for that purpose.

90.    This recording then states:

Please press 1 to acknowledge this disclaimer and resume this call.

91.    Korde thus identifies itself as a debt collector on its recorded message to

anyone who calls it at this number.

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

92.    This notice purported to schedule a foreclosure sale of the Plaintiff's

property, even though it had no contractual or statutory ability to conduct such a

sale.

93.    Korde caused the publication of three foreclosure advertisements of a

foreclosure sale of Plaintiff's home, which were published in the Newport Daily

News.

94.    Korde hired and authorized an auctioneer to appear at the Plaintiff's home

on June 28, 2018 to conduct a foreclosure sale, even though such sale could not

legally occur.

95.    The facts alleged in this complaint establish that Korde violated 15 U.S.C.

§1692e (5)by using false deceptive or misleading representations or means in

connection with the collection of any debt.

96.    The facts alleged in this complaint establish that Korde deceptively

threatened to schedule a foreclosure sale  on Plaintiffs' property, on behalf of an

undisclosed entity and violated 15 U.S.C. §1692e(5) by making a threat to take an

action that could not be legally taken.

97.    Specifically acceleration and sale could not occur without compliance with

the HUD Regulations.

98.    Korde by its May 4, 2018 letter threated to take nonjudicial action to effect

dispossession or disablement of Plaintiff's property in violation of  even though

19

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

there was no present right of Carrington to possession of the property claimed as collateral through an enforceable security interest.

99.    This letter thus constituted a violation of 15 U.S.C. §1692f(6).

99.    Carrington had no ability to exercise the statutory power of sale due to its failure to comply with the HUD regulations incorporated into the terms of the mortgage as alleged in this complaint.

100.    The actions of Korde have occurred within one year of the filing of this complaint.

101.    The Plaintiff has incurred actual damages in regard to this action. As a result of the improper and invalid attempt to exercise of the statutory power of sale and a purported foreclosure sale due to the failure to comply with the HUD regulations, Plaintiff's mortgage loan account was charged fees and costs and expenses for certified mail, advertising costs, legal fees, auctioneer costs and other improper charges.

102.    Plaintiff lives in the property with his family. He has incurred emotional injuries and damages due to the improper alleged foreclosure on his home without complying with the terms of the mortgage.

103.    Due to the foreclosure and subsequent eviction actions against him, he has been worried about being evicted from his home and is concerned for his family's health and welfare.

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

104.    This has caused him to lose sleep and suffer emotional distress due to the actions of Korde.

105.    Plaintiff has  hired  an attorney, in regard to the improper action of Korde which sent him a Notice of Foreclosure sale and  is seeking to evict him, after having claimed to have conducted a sale without having complied with the HUD regulations and the terms of the mortgage.

106.    Plaintiff has incurred legal fees for the prosecution of this action and in defending the eviction action due to the actions of Korde.

107.    He has incurred costs for gasoline to visit his attorney on at least four occasions driving to his attorney's office for a round trip totaling  53.4 miles.  The IRS standard mileage allowance provides for .56 per mile.

108.    He has had arguments with his wife and children due to the pressure of this foreclosure, causing decreased affection with his wife and a loss of the enjoyment of life due to the actions of Korde.

109.     He has incurred attorney fees and costs for the prosecution of this action and in defending the eviction in 2CA-2018-1202.

110.    His fee agreement with his attorney provides that he will be responsible for legal fees expenses incurred in regard to this action and in regard to the eviction case.

21

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

WHEREFORE, Plaintiffs demands that this Court grant the following relief:

a.   Judgment against Korde for actual damages, and statutory damages of $1,000.00 for this violation of the FDCPA.

b.   Judgment against Korde for legal fees and costs.

c.   All other just and proper relief.

RYAN CORDEIRO
By his Attorney

May 2, 2019

/s/ John B. Ennis
JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, RI 02920
(401) 943-9230
Jbelaw75@gmail.com

## COUNT V

**VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT BY KORDE & ASSOCIATES, P.C. PURSUANT TO 15 U.S.C. §1692e(2), §1692e(5) and §1692e(10)**

111.   Paragraphs 1-110 are incorporated by reference.

112.   Korde is a debt collector as defined by 15 USC 1692 et seq.

113.   The primary business of Korde is the collection of debts.

114.   Korde regularly collects debts for other entities.  In fact it regularly references itself as a Debt Collector and has referenced itself as a debt collector in its communications with the Plaintiff.

22

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

115.   The vast majority of the business of Korde is as a Debt Collector. It has access to a computer software system whereby it is able to act as a default servicer provider for a loan servicer such as Carrington and  seeks to collect payments on past due mortgages for loan servicers such as Carrington.

116.   The primary business of Korde is the collection of debts.

117.   Korde collectsdebts for mortgagees in nonjudicial foreclosures, judicial foreclosures, eviction actions, providing payoff statements and reinstatement statements to consumer homeowners to cause them to make payments to it on behalf of creditors, filing proofs of claim in bankruptcy and litigation designed to collect funds for creditors from consumers.

118.   Korde is a default service provider and is the Rhode Island affiliate of The Logs Group, LLC, which provides debt collection services for mortgagees and loan servicers.

119.    Korde on October 8, 2018 filed a complaint for eviction on behalf of Carrington in case number 2CA-2018-1202.

120.   Korde filed this case in an attempt to collect a debt for purported  use and occupancy for Carrington against the Plaintiffs.

23

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

121.   Pursuant to R.I.G.L 34-18-37 and 34-18-38.1 and 34-18-38.2, a purported eviction against a mortgagor of the property follows the procedure in evicting a periodic tenant, after notice of termination was sent in accord with 34-18-56(c).

122.   The provisions of R.I.G.L 34-18-43 thus apply to such evictions.

123.   This section allows damages for reasonable use and occupancy only for the period of time subsequent to the termination.

124.   The District Court lacks jurisdiction to award damages for use and occupancy at any time prior to the termination notice.

125.   On or about August 15, 2018, Korde, claiming to act on behalf of Carrington, mailed a letter described by Korde as a termination notice to the Plaintiff.

126.   A copy of this termination notice is attached as Exhibit   E.

127.   This notice purported to terminate the tenancy of Plaintiff as a tenant as sufferance on October 1, 2018.

130   Subsequently on October 8, 2018, Korde filed in the Second District Court a complaint against Ryan Cordeior and Ashley Cordeiro. A copy is attached as Exhibit F.

131.   When it filed this case, Korde demanded judgment for use and occupancy from July 24, 2018, the date of the purported execution of the foreclosure deed.

132.   This demand for judgment for use and occupancy prior to October 1, 2018 constituted a violation of 15 U.S.C. §1692e(5), by threatening in its complaint and threatening to take legal action that could not be taken.

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

133.   This demand for judgment for use and occupancy prior to October 1, 2018 constituted a violation of 15 U.S.C. §1692e(10), by the use of a deceptive means to collect this debt and a false representation that Carrington was entitled to Judgment for use and occupancy since July 24, 2018, not from October 1, 2018.

134.   This demand for judgement for use and occupancy prior to October 1, 2018 constituted a violation of 15 U.S.C. §1692e(2), as Korde falsely represented the character, amount and legal status of the alleged debt, namely that Carrington was entitled to Judgment for use and occupancy since July 24, 2018, not from October 1, 2018.

135.   The purpose of this complaint was to collect a debt and coerce the Plaintiffs to pay use and occupancy to Carrington, by use of false statements in the complaint alleging that Carrington sought damages for use and occupancy from the date of the purported foreclosure.

136.   The actions of Korde have occurred within one year of the filing of this complaint.

137.   The Plaintiff has incurred actual damages in regard to this action.

138.   Due to the actions of Korde in demanding use and occupancy Plaintiffs have been concerned and worried about having to pay for damages from July 24, 2018 through October 1, 2018, which under no circumstances could Carrington obtain in the District Court.

25

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

139.   This demand for an extra 2 months of use and occupancy could not be paid by the Plaintiffs, who were concerned about their financial welfare, if they had to pay this amount.

140.   This has caused him to lose sleep and suffer emotional distress due to the actions of Korde.

141.   Plaintiff has hired an attorney, in regard to the improper action of Korde in filing this complaint with this improper demand for monetary damages in excess of those which the Court would be able to award.

141.   Plaintiffs have incurred legal fees for the prosecution of this action and in defending the eviction action due to the actions of Korde.

142.   Plaintiff, Ryan Cordeiro has incurred costs for gasoline to visit his attorney on at least one occasion driving to his attorney's office for a round trip totaling 53.4 miles.  The IRS standard mileage allowance provides for .56 per mile.

143.    He has incurred attorney fees and costs for the prosecution of this action and in defending the eviction in 2CA-2018-1202.

144.   He has had to use his cell phone to call and receive calls from his attorney. These calls are charged to him pursuant to him for cell phone usage and monthly fees.

145.   Plaintiff has used electricity to recharge his cell phone for calls when he spoke with his attorney.

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

146.   Plaintiffs have taken time away from their home and work schedules and from their children to worry about this case.

147.   Plaintiff, Ryan Cordeiro has taken time away from his home and work schedules and from his children to come to visit his attorney,

148.   Their fee agreement with their attorney provides that they will be responsible for legal fees expenses incurred in regard to this action and in regard to the eviction case.

149.   Pursuant to the FDCPA, Plaintiffs are entitled to statutory damages of $1000.00 for each distinct violation.

        WHEREFORE, Plaintiffs demand that this Court grant the following relief:

   a.   Judgment against Korde for actual damages, compensatory damages and statutory damages of $1,000.00 for this violation of the FDCPA.

   b.   Judgment against Korde for legal fees and costs.

   c.   All other just and proper relief.


                                RYAN CORDEIRO
                                By his Attorney

May 2, 2019

                                /s/ John B. Ennis
                                JOHN B. ENNIS, ESQ. #2135
                                1200 Reservoir Avenue
                                Cranston, RI 02920
                                (401) 943-9230
                                Jbelaw75@gmail.com

27

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

## COUNT VI

## VIOLATION OF THE TRUTH IN LENDING ACT

**COMPLAINT FOR DAMAGES FOR VIOLATIONS OF THE TRUTH IN
LENDING ACT BY DEFENDANT'S  FAILURE TO IDENTIFY THE
OWNER OF THE NOTE AND THE MORTGAGE AND THE MASTER
SERVICER FOR THE NOTE AND THE MORTGAGE**

150.    Paragraphs 1-149  are incorporated by reference.

151.    This is an action for damages brought by the Plaintiff, who is a consumer,

for Carrington's violations of the Truth in Lending Act, 15 U.S.C. §1601 et seq.

("TILA").

153.    Specifically, Plaintiff seeks the remedies provided in TILA for Defendant's

failure to respond a request for the identity of the owner and holder of Plaintiff's

mortgage loan and identity of the master servicer as required by 15 U.S.C. §§

1641(f) and   1641(g) respectively.

154.    This Court has jurisdiction pursuant to 14 U.S.C. § 1641(f) to provide

private remedies for failure to respond to a borrower's request for information

under that section.  15 U.S.C. § 1640 provides for statutory damages of the type

alleged in this Complaint to a range of not less than $400 nor greater than

$4000.00.Jurisdiction is further conferred on this Court by 15 U.S.C. §1640(e).

155.    The Defendant, Carrington, is a Delaware corporation.

28

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

156.   On June 22, 2009 Bank of America, N.A. gave a mortgage loan to Plaintiff
for the purpose of purchasing the Plaintiff's residence at  38 Rock Street, Tiverton,
Rhode Island (the "property"), referred to in this complaint as the "Mortgage
loan".

157.   In connection with the Mortgage Loan the Plaintiff executed a promissory
note to Bank of America in the original principal amount of $169,806.00 payable
to Bank of America.

158.   The Mortgage Note was secured by a Mortgage on the property dated   June
22, 2009  and recorded in the land evidence records of the Town of  Tiverton,
which named Bank of America as Lender.

158.   The mortgage loan is a "federally related mortgage loan" as defined in 12
U.S.C. § 2602(1).

159.   On or about November 25, 2018,  Plaintiff, by his attorney,  mailed a letter
to Carrington requesting the name of the owner of the Mortgage Note and clearly
alerting Defendant to the fact that his request was being made pursuant to TILA,
15 U.S.C. § 1641.

160.   Plaintiff caused such a request to be signed by his attorney and mailed to
Carrington at its designated address for receipt of Requests for Information and
Notices of Error, PO Box 5001, Westfield, Indiana 46074.

161.   A copy of this letter is attached as Exhibit G.

29

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

162.   This letter was sent by certified mail, with United States Postal Service certified mail number 9407110898765022230356.

163.   This letter was received by December 3, 2018, as indicated by Exhibit H, the tracking receipt for this letter from the United States Postal Service.

164.   Carrington did not provide this information within 10 business days or at any time to Plaintiff's request to provide the owner of the mortgage note and the identity of the Master Servicer, thus violating 15 U.S.C. §1641(f) with respect to the Mortgage Loan.

165.The sole response by Defendant was a letter dated December 7, 2018,("Exhibit I") in which it stated that the current investor/note holder of the loan is Carrington Mortgage Services, LLC and did not identify the owner of the mortgage loan and did not identify the Master Servicer.

166.   The Plaintiff has incurred actual damages, costs and legal fees in regard to this action.

167.    He has incurred costs for gasoline to visit his attorney on at least five occasions, driving to his attorney's office for four round trips of 53.4 miles regarding this claim.  The IRS standard mileage allowance provides for .56 per mile.

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

168.   He has had to use his cell phone to call and receive calls from his attorney regarding this claim. These calls are charged to him pursuant to him for cell phone usage and monthly fees.

169.   Plaintiff has spent money for electricity to recharge his cell phone for calls when he spoke with his attorney regarding this claim.

170.   Plaintiff has incurred the cost of postage and paper and copy charges by mailing another letter to Carrington to request this information again due to the failure of Carrington to provide this information.

171.   Plaintiff, Ryan Cordeiro has taken time away from his home and work schedules and from his children to come to visit his attorney and to call his attorney regarding the failure of Carrington to comply with this request.

172.   He has incurred attorney fees and costs for the prosecution of this action.

173.   His fee agreement with his attorney provides that he will be responsible for legal fees expenses incurred in regard to this action and in regard to the eviction case.

174.   Plaintiff is entitled to statutory damages for this violation of TILA.

31

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

WHERFORE, Plaintiff demands Judgment against Carrington for statutory

damages of at least $4,000.00, plus actual damages, plus attorney fees and costs.

                                        RYAN CORDEIRO
                                        By his Attorney

April 26, 2019

                                        /s/ John B. Ennis
                                        JOHN B. ENNIS, ESQ. #2135
                                        1200 Reservoir Avenue
                                        Cranston, RI 02920
                                        (401) 943-9230
                                        Jbelaw75@gmail.com

## COUNT VII

### <u>VIOLATIONS OF REGULATION X BY FAILING TO CORRECT THE ERROR OF EXERCISING THE STATUTORY POWER OF SALE AND CONDUCTING A FORECLOSURE SALE WITHOUT COMPLYING WITH THE HUD REGULATIONS</u>

175.   Paragraphs 1-174 are incorporated by reference.

176.   This is an action for actual and statutory damages filed by the Plaintiff for

violations of the Dodd-Frank Wall Street Reform and Consumer Protection Act

(DFA) and specifically of the Regulations enacted pursuant thereto by the

Consumer Financial Protection Bureau (CFPB).  This is also an action for actual

and statutory damages filed by the Plaintiff for violations of the Real Estate

Settlement Procedures Act, ("RESPA") and the Truth in Lending Act, 15 U.S.C. §

1601 et. seq.  ("TILA").

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

177.   This action is specifically filed to enforce the Regulations that became effective on January 10, 2014, specifically 12 CFR § 1024.36(c) and 12 CFR §1024.36(d)(2)(i)(A) of Regulation X.

178.   Carrington performs its mortgage loan servicing business under the name of Carrington Mortgage Services, LLC ("Carrington").  Carrington is the current servicer of a Promissory Note and Deed of Trust on the Plaintiff's residential real estate.

179.   In January 2013, the Consumer Financial Protection Bureau issued a number of final rules concerning mortgage markets in the United States, pursuant to the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), Public Law No. 111-203, 124 Stat. 1376 (2010).

180.   Specifically, on January 17, 2013, the CFPB issued the Real Estate Settlement Procedures Act (Regulation X) and the Truth in Lending Act (Regulation Z) Mortgage Servicing Final Rules, 78 FR §10901 (Regulation Z)(February 14, 2013) and 78 FR §10695 (Regulation X)(February 14, 2013). These Regulations became effective on January 10, 2014.

181.   The residential mortgage loan in this case is a "federally related mortgage loan" as that term is defined by Regulation 1024.2 (b) of the said Regulations.

182.   The Defendant in this case is subject to the said Regulations and does not qualify for any of the exceptions noted in the said Regulations for "small

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

servicers." Neither is Defendant a "qualified lender," as defined in 12 CFR § 617.7000.

183. The Plaintiff is asserting a claim for relief against the Defendant for breach of the specific Rules under Regulation X as set forth below. The Plaintiff has a private right of action under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(f) for these breaches and such an action includes actual damages, costs, statutory damages and attorney's fees.

184. On or about January 19, 2019, the Plaintiff sent a written notice of error to the Defendant that included Defendant that included the name of the borrower, the identity of the account, the property description and stated the information requested. This request was made pursuant to 12 CFR § 1024.36(a). A copy is attached as Exhibit J.

185. The Notice of Error was mailed by certified mail, return receipt requested, having an article number 9407110898765026069930. The Notice was mailed to the address noticed by the Defendant on its website as the designated address for requesting such information as provided for by 12 CFR § 1024.35.

186. The Notice of Error was received by the Defendant on January 24, 2019, as indicated by the USPS tracking receipt attached as Exhibit L.

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

187.   The Plaintiff's Notice of Error referenced failure to correct an error by

which Defendant had added legal fees, advertising costs and other improper fees

and recorded a foreclosure deed regarding a purported and disputed foreclosure of

Plaintiff's home without complying with the HUD regulations which mandated a

face to face meeting and all providing the consumer all loss mitigation options

prior to declaring default, acceleration and sale.

188.   Under 12 CFR 1024.35 the Notice of Error had to be responded to by the

Defendant within thirty (30) business days of the date of the receipt of the Request.

The Regulations provide that in computing this time period public holidays,

Saturdays and Sundays are excluded.  As a result, in this case, the written response

was due no later than March 7, 2019.

189.   Defendant did not correct the error.  It did not send a response to the Notice

of Error and did not correct the error. It took no action to correct the error and thus

it failed to correct the error and rescind the foreclosure and remove all fees from

the mortgage loan account.

190.   The Defendant in this case has exhibited a pattern and practice of failing to

comply with the Regulations as it failed to respond to the other Notice of Error

alleged in this case,  and ignored and refused to respond to 11 Requests for

Information, which it received on November 28, 2018 and one Request for

Information , which it received on March 15, 2019.

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

191.   As a result of this lack of compliance by the Defendant, Carrington is liable to Plaintiff for actual damages, statutory damages, costs and attorney's fees failure to correct the error.

192.   The Plaintiff has incurred actual damages, costs and legal fees in regard to this action relating to this Notice of Error, as alleged in this complaint.

193.   He has incurred costs for gasoline to visit his attorney on at least four occasions, driving to his attorney's office for a round trip totaling 53.4 miles to speak with his attorney regarding this Notice of Error.  The IRS standard mileage allowance provides for .56 per mile.

194.   He has had to incur the expense of using electricity to recharge his cell phone to call and receive calls from his attorney regarding this Notice of Error.

195.   He has incurred postage and copying costs in transmitting this Notice of Error to Carrington.

196.   His mortgage loan account has been improperly charged in legal fees and costs, which has not been corrected and the improper foreclosure has not been rescinded.

197.    He has spent time away from his normal work and has taken time away from his wife and children to visit his attorney and to call his attorney, regarding this Notice of Error.

36

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

198.   He has incurred attorney fees and costs for the prosecution of this action. His fee agreement with his attorney provides that he will be responsible for legal fees and expenses incurred in regard to this action.

199   The Plaintiff has demonstrated through the failure of the Defendant to respond to 12 Requests for Information that the Defendant has exhibited a pattern and practice of failure to respond to RESPA Notices of Error.

200.   The failure of the Defendant to correct the Notices of Error in this case establish that the pattern and practice of  Carrington to ignore all RESPA Requests for Information and Notices of Error.

WHEREFORE, Plaintiff demands judgment for actual damages plus statutory damages of $2,000.00 for this failure to correct this violation of Regulation X  plus attorney fees and costs.

RYAN CORDEIRO
By his Attorney

April 26, 2019

/s/ John B. Ennis
JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, RI 02920
(401) 943-9230
Jbelaw75@gmail.com

37

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

## COUNT VIII

**VIOLATIONS OF REGULATION X BY FAILING TO CORRECT THE**
**FAILING TO IDENTIFY THE OWNER OF THE MORTGAGE LOAN**
**AND THE MASTER SERVICER OF THE MORTGAGE LOAN**

201.   Paragraphs 1-200 are incorporated by reference.

202.   This is an action for actual and statutory damages filed by the Plaintiff for

violations of the Dodd-Frank Wall Street Reform and Consumer Protection Act

(DFA) and specifically of the Regulations enacted pursuant thereto by the

Consumer Financial Protection Bureau (CFPB).   This is also an action for actual

and statutory damages filed by the Plaintiff for violations of the Real Estate

Settlement Procedures Act, ("RESPA") and the Truth in Lending Act, 15 U.S.C. §

1601 et. seq.   ("TILA").

203.   This action is specifically filed to enforce the Regulations that became

effective on January 10, 2014, specifically 12 CFR § 1024.36(c) and 12 CFR

§1024.36(d)(2)(i)(A) of Regulation X.

204.   Carrington performs its mortgage loan servicing business under the name of

Carrington Mortgage Services, LLC ("Carrington").   Carrington is the current

servicer of a Promissory Note and Deed of Trust on the Plaintiff's residential real

estate.

205.   In January 2013, the Consumer Financial Protection Bureau issued a number

of final rules concerning mortgage markets in the United States, pursuant to the

38

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), Public Law

No. 111-203, 124 Stat. 1376 (2010).

206.   Specifically, on January 17, 2013, the CFPB issued the Real Estate

Settlement Procedures Act (Regulation X) and the Truth in Lending Act

(Regulation Z) Mortgage Servicing Final Rules, 78 FR §10901 (Regulation

Z)(February 14, 2013) and 78 FR §10695 (Regulation X)(February 14, 2013).

These Regulations became effective on January 10, 2014.

207.   The residential mortgage loan in this case is a "federally related mortgage

loan" as that term is defined by Regulation 1024.2 (b) of the said Regulations.

208.   The Defendant in this case is subject to the said Regulations and does not

qualify for any of the exceptions noted in the said Regulations for "small

servicers."  Neither is Defendant a "qualified lender," as defined in 12 CFR §

617.7000.

209.   The Plaintiff is asserting a claim for relief against the Defendant for breach

of the specific Rules under Regulation X as set forth below.  The Plaintiff has a

private right of action under the Real Estate Settlement Procedures Act, 12 U.S.C.

§ 2605(f) for these breaches and such an action includes actual damages, costs,

statutory damages and attorney's fees.

210.   On or about January 19, 2019, the Plaintiff sent a written notice of error to

the Defendant that included Defendant that included the name of the borrower, the

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

identity of the account, the property description and stated the information requested. This request was made pursuant to 12 CFR § 1024.36(a). A copy is attached as Exhibit L.

211.  The Notice of Error was mailed by certified mail, return receipt requested, having an article number 9407110898765026069947.  The Notice was mailed to the address noticed by the Defendant on its website as the designated address for requesting such information as provided for by 12 CFR § 1024.35.

212.  The Notice of Error was received by the Defendant on January 24, 2019, as indicated by the USPS tracking receipt attached as Exhibit M.

213.  The Plaintiff's Notice of Error referenced the failure by Carrington  to correct an error due to the failure of Carrington to identify the owner of the mortgage loan and the Master Servicer within ten business days of receipt.

214.  Under 12 CFR 1024.35 the Notice of Error had to be responded to by the Defendant within thirty (30) business days of the date of the receipt of the Request. The Regulations provide that in computing this time period public holidays, Saturdays and Sundays are excluded.  As a result, in this case, the written response was due no later than March 7, 2019.

215.  Defendant did not correct the error. In its response to Plaintiff by letter dated December 7, 2018, attached as Exhibit I, it had merely identified Carrington as the investor/note holder, but did not identify the owner or the Master Servicer.

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

216.   Carrington did not send a response to the Notice of Error and did not correct the error and took no action to review the error. It thus failed to correct the error and provide the information required by Regulation X.

217.   The Defendant in this case has exhibited a pattern and practice of failing to comply with the Regulations as it failed to comply with 11 Requests for Information, which it received on November 28, 2018 and one Request for Information, which it received on March 15, 2019.

218.   As a result of this lack of compliance by the Defendant, Carrington is liable to Plaintiff for actual damages, statutory damages, costs and attorney's fees for its failure to correct the error.

219.   The Plaintiff has incurred actual damages, costs and legal fees in regard to this action relating to this Notice of Error, as alleged in this complaint.

220.   He has incurred costs for gasoline to visit his attorney on at least four occasions, driving to his attorney's office for a round trip totaling 53.4 miles to speak with his attorney regarding this Notice of Error. The IRS standard mileage allowance provides for .56 per mile.

221.   He has had to incur the expense of using electricity to recharge his cell phone to call and receive calls from his attorney regarding this Notice of Error.

222.   He has incurred postage and copying costs in transmitting this Notice of Error to Carrington.

41

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

222.    He has spent time away from his normal work and has taken time away from his wife and children to visit his attorney and to call his attorney, regarding this Notice of Error.

223.    He has incurred attorney fees and costs for the prosecution of this action. His fee agreement with his attorney provides that he will be responsible for legal fees and expenses incurred in regard to this action.

224.    The Plaintiff has demonstrated through the failure of the Defendant to respond to 12 Requests for Information that the Defendant has exhibited a pattern and practice of failure to respond to RESPA Notices of Error.    The failure of the Defendant to correct the Notices of Error in this case establish that the pattern and practice of  Carrington to ignore all RESPA Requests for Information and Notices of Error.

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

WHEREFORE, Plaintiff demands judgment for actual damages as alleged plus statutory damages of $2,000.00 for this violation of Regulation X,  plus attorney fees and costs.

RYAN CORDEIRO
By his Attorney

April 26, 2019

/s/ John B. Ennis
JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, RI 02920
(401) 943-9230
Jbelaw75@gmail.com

Plaintiff demands a Trial by Jury

43

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

# EXHIBIT A

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

Doc #: 00001966
Bk: 1250 Pg: 162

LOAN #
Return To:
FL9-700-01-01
JACKSONVILLE POST CLOSING
BANK OF AMERICA
9000 SOUTHSIDE BLVD.
BLDG 700, FILE RECEIPT DEPT.
JACKSONVILLE, FL 32256
Prepared By:
SHONITA YANCEY
BANK OF AMERICA N.A.
9000 SOUTHSIDE BLVD - BLDG 600
JACKSONVILLE, FL 322560000

----------------- [Space Above This Line For Recording Data] -----------------

State of Rhode Island

# MORTGAGE

FHA Case No.

THIS MORTGAGE ("Security Instrument") is given on    JUNE 22, 2009
The Mortgagor is   RYAN M CORDEIRO, INDIVIDUAL TENANCY

whose address is  5 ROLLING GREEN DR APT G, FALL RIVER, MA  02720

("Borrower"). This Security Instrument is given to  BANK OF AMERICA N.A.

which is organized and existing under the laws of  UNITED STATES OF AMERICA
and whose address is  9000 SOUTHSIDE BLVD - BLDG 600 JACKSONVILLE, FL 322560000
                                        ("Lender"). Borrower owes Lender the principal sum of
ONE HUNDRED SIXTY NINE THOUSAND EIGHT HUNDRED SIXTY SIX AND 00/100
                                        Dollars (U.S. $   169,866.00        ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which
provides for monthly payments, with the full debt, if not paid earlier, due and payable on
JULY 01, 2039                    . This Security Instrument secures to Lender: (a) the repayment of
the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b)
the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this
Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security

**FHA Rhode Island Mortgage - 4/96**
-4R(RI) (0305)          Amended 2/98          FHRI 06/19/09 10:41 AV
Page 1 of 9          Initials: _RMC_
    VMP Mortgage Solutions (800)521-7291

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

Doc #: 00001966
Bk: 1250 Pg: 169

Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to the Lender, with Mortgage Covenants upon the Statutory Condition and with the Statutory Power of Sale, the following described property located in NEWPORT

County, Rhode Island:

"LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF."

Parcel ID Number: TBD

which has the address of  38 ROCK STREET                                              [Street]

TIVERTON                  [City], Rhode Island    02878    [Zip Code] ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

1. Payment of Principal, Interest and Late Charge. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. Monthly Payment of Taxes, Insurance and Other Charges. Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA

Initials: _RrC_

-4R(RI) (0305)

FHRI 06/19/09 10:41 AM

Page 2 of 8

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

Doc #: 00001966
Bk: 1250 Pg: 170

for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or

Initials: _PmC_

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

Doc #: 00001966
Bk: 1250 Pg: 171

substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. **Fees.** Lender may collect fees and charges authorized by the Secretary.

9. **Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i)  Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

Initials: _RMC_

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

Doc ☆: 00001966
Bk: 1250 Pg: 172

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) No Waiver. If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) Regulations of HUD Secretary. In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) Mortgage Not Insured. Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. Reinstatement. Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. Notices. Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The

Initials: RMC

⊛—4R(RI) (0305)
FHRI 06/19/09 10:41 AM

Page 5 of 8

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

Doc #: 00001966
Bk: 1250 Pg: 173

notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

Initials: RMC

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

Doc #: 00001966
Bk: 1250 Pg: 174

18. **Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may invoke the STATUTORY POWER OF SALE and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of notice of sale to Borrower as provided in paragraph 13. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by applicable law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.* ) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

19. **Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument shall become null and void. Lender shall discharge this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

20. **Waiver of Homestead.** If Borrower heretofore has acquired or hereafter acquires an estate of homestead in the Property, Borrower hereby agrees that such homestead estate is waived to the extent of this Security Instrument and the amount due under the Note and to the extent of all renewals, extensions and modifications of this Security Instrument or the Note, and that said homestead estate is subject to all of the rights of Lender under this Security Instrument and the Note and all renewals, extensions and modifications of this Security Instrument and the Note, and is subordinate to the lien evidenced by this Security Instrument, and all renewals, extensions and modifications of this Security Instrument. Furthermore, Borrower hereby waives the benefits of any homestead or similar laws or regulations that may otherwise be applicable from time to time.

21. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider  ☐ Growing Equity Rider  ☐ Other [specify]
☐ Planned Unit Development Rider  ☐ Graduated Payment Rider

Initials: _RMC_

-4R(RI) (0305)
FHRI 06/19/09 10:41 AM

Page 7 of 9

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

Doc #: 00001966
Bk: 1250 Pg: 175

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____ (Seal)
James H. Barrett, Jr.                  RYAN M CORDEIRO      -Borrower

_____ (Seal)
                                                            -Borrower

_____ (Seal)        _____ (Seal)
                        -Borrower                                   -Borrower

_____ (Seal)        _____ (Seal)
                        -Borrower                                   -Borrower

_____ (Seal)        _____ (Seal)
                        -Borrower                                   -Borrower

COMMONWEALTH OF MASSACHUSETTS
~~STATE OF RHODE ISLAND.~~ of                    BRISTOL County ss:

On this   22ND   day of   JUNE          , 2009 , in FALL RIVER
in said County, before me personally appeared

RYAN M. CORDEIRO

each and all to me known and known
to me to be the person(s) executing the foregoing instrument and acknowledged said execution to be his/her/their free act and deed.

_____
Notary Public

Sharaf, Kelley & Maloney, P.C.
(617) 277-7887

JAMES H. BARRETT, JR.
Notary Public
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires
February 28, 2014

-4R(RI) (0305)                    Page 9 of 9              FHRI 06/19/09 10:41 AM 6722053938

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

Doc #: 00001966
Bk: 1250 Pg: 176

## EXHIBIT A - LEGAL DESCRIPTION

A certain lot or tract of land situated on the Easterly side of Rock Street in the Town of Tiverton, County of Newport, State of Rhode Island, and bounded and described as follows:

NORTHERLY by land now or formerly of Zenon St. Laurent, one hundred and twenty-five (125) feet;

EASTERLY by land now or formerly of Ponta Delgada Patriots Club, Inc. fifty (50) feet;

SOUTHELRY by land now or formerly of Peter Correa, one hundred and twenty-five (125) feet; and

WESTERLY by Rock Street, fifty (50) feet.

Containing twenty-two and 95/100 square rods of land, be the same more or less, or however otherwise the same may be bounded or described.

Beging Lot Sixteen (16) in Section "B" Shove Mill Plan.

Property Address:
38 Rock Street
Tiverton, RI
Block: 26, Map: 9-7, Lot: 15

RECEIVED
TOWN OF TIVERTON
Jun 22,2009 11:49:14A
AND RECORDED ATTEST
NANCY L. MELLO, TOWN CLERK

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

Doc #: 00001965
Bk: 1250 Pg: 165

# QUITCLAIM DEED

**Grantor: I, Christopher J. Fay,** of **38 Rock Street, Tiverton,** County Rhode Island 02878,

for consideration paid of **One Hundred Seventy Three Thousand dollars and Zero cents ($173,000.00),** hereby grant to

**Grantee: Ryan M. Cordeiro,** of 5 Rolling Green Drive, Apt G, Fall River, MA,

with quitclaim covenants

the land in **Tiverton** being described as follows:

A certain lot or tract of land situated on the Easterly side of Rock Street in the Town of Tiverton, County of Newport, State of Rhode Island, and bounded and described as follows:

NORTHERLY by land now or formerly of Zenon St. Laurent, one hundred and twenty-five (125) feet;

EASTERLY by land now or formerly of Ponta Delgada Patriots Club, Inc. fifty (50) feet;

SOUTHELRY by land now or formerly of Peter Correa, one hundred and twenty-five (125) feet; and

WESTERLY by Rock Street, fifty (50) feet.

Containing twenty-two and 95/100 square rods of land, be the same more or less, or however otherwise the same may be bounded or described.

Being Lot Sixteen (16) in Section "B" Shove Mill Plan.

The Grantor hereby Release all rights of Homestead

This conveyance is such that no withholding is required under R.I.G.L. 44-30-71.3 as grantor is a resident of Rhode Island as evidenced by affidavit.

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

Doc #: 00001965
Bk: 1250 Pg: 166

Witness my hand and seal this 22nd day of June, 2009.

Christopher J. Fay

_____

COMMONWEALTH OF MASSACHUSETTS

BRISTOL County, ss

On this 22ND day of JUNE, 2009, before me, the undersigned notary public, personally appeared Christopher J. Fay, proved to me through satisfactory evidence of identification, which were [X] Driver's License; [ ] State ID; [ ] Passport; [ ] Other Government Issued ID; [ ] Other _____, (or personally known to me), to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he/she/they signed it voluntarily for its stated purpose.

Notary Public
My Commission Expires: 02/28/14

GRANTEE
38 ROCK ST
TIVERTON, RI 02878

JAMES H. BARRETT, JR.
Notary Public
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires
February 28, 2014

TAX ASSESSORS
BLOCK 26 CARD 15

006126
RECORDER TOWN OF TIVERTON
RHODE ISLAND
REAL ESTATE CONVEYANCE TAX

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

# EXHIBIT B

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

Multistate

# NOTE

| FHA Case No. |
| --- |
|  |

JUNE 22, 2009                                              LOAN #
{Date}

38 ROCK STREET, TIVERTON, RI   02878

[Property Address]

## 1. PARTIES
"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means BANK OF AMERICA N.A.

and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST
In return for a loan received from Lender, Borrower promises to pay the principal sum of ONE HUNDRED SIXTY NINE THOUSAND EIGHT HUNDRED SIXTY SIX AND 00/100

Dollars (U.S. $     169,866.00     ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of  FIVE
percent (     5.000        %) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED
Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT
(A) Time
Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on AUGUST 01        ,   2009   . Any principal and interest remaining on the first day of    JULY          ,
2039      , will be due on that date, which is called the "Maturity Date."
(B) Place
Payment shall be made at BANK OF AMERICA, N.A., P.O. BOX 535318, ATLANTA,   GEORGIA
30353-5318                                        or at such place as Lender may  designate in
writing by notice to Borrower.
(C) Amount
Each monthly payment of principal and interest will be in the amount of U.S. $        911.88             .
This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.
(D) Allonge to this Note for payment adjustments
If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge  ☐ Growing Equity Allonge  ☐ Other [specify]



**FHA Multistate Fixed Rate Note - 10/95**
—BS1R (9608)

ELECTRONIC LASER FORMS, INC. - (800)327-0545

Page 1 of 3

BS1R 06/19/09 10:41 AM

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

## 6. BORROWER'S FAILURE TO PAY

### (A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of          FOUR                    percent (      4.0          %) of the overdue amount of each payment.

### (B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

### (C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

*PMc*


–BS1R (9808)

BS1R 06/19/09 10:41 AM

Page 2 of 3

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

6/22/09 (Seal) _____ (Seal)
RYAN M CORDEIRO          -Borrower          -Borrower

_____ (Seal) _____ (Seal)
          -Borrower          -Borrower

_____ (Seal) _____ (Seal)
          -Borrower          -Borrower

_____ (Seal) _____ (Seal)
          -Borrower          -Borrower

James H. Barrett Jr.  6/22/09
WITNESS

-BS1R (0608)          Page 3 of 3

BS1R 06/19/09 10:41 AM

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

## Signature/Name Affidavit

LOAN NUMBER ! _____

APPLICANT   RYAN M CORDEIRO _____

THIS IS TO CERTIFY THAT MY LEGAL SIGNATURE IS AS WRITTEN AND TYPED BELOW.
(This signature must *exactly* match signatures on the Note and Mortgage or Deed of Trust.)

RYAN M CORDEIRO
(Print or Type Name)                                    Signature

(If applicable, complete the following)

THE UNDERSIGNED, _____
CERTIFIES THAT HE/SHE IS ONE AND THE SAME PERSON AS:

_____         _____
(Print or Type Name Variation)           (Print or Type Name Variation)

_____         _____
(Print or Type Name Variation)           (Print or Type Name Variation)

AS SIGNED ON ANY OF THE DOCUMENTS EXECUTED IN CONNECTION WITH THIS REAL ESTATE TRANSACTION.

_____
Applicant's Signature

Sworn to before me this 22ND day of JUNE 2009

James H. Barrett, Jr.
Notary Public in and for the
State of MASSACHUSETTS
County of BRISTOL

JAMES H. BARRETT, JR.
Notary Public
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires
February 28, 2014

My Commission Expires: 2/28/14

BA216 (9904)                                              MULTISTATE

R939 06/19/09 10:41 AM

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

## Signature/Name Affidavit

LOAN NUMBER _____

APPLICANT __ RYAN M CORDEIRO _____

THIS IS TO CERTIFY THAT MY LEGAL SIGNATURE IS AS WRITTEN AND TYPED BELOW.
(This signature must exactly match signatures on the Note and Mortgage or Deed of Trust.)

RYAN M CORDEIRO
(Print or Type Name)                           Signature

(If applicable, complete the following)

THE UNDERSIGNED, _____
CERTIFIES THAT HE/SHE IS ONE AND THE SAME PERSON AS:

_____          _____
(Print or Type Name Variation)            (Print or Type Name Variation)

_____          _____
(Print or Type Name Variation)            (Print or Type Name Variation)

AS SIGNED ON ANY OF THE DOCUMENTS EXECUTED IN CONNECTION WITH THIS REAL ESTATE TRANSACTION.

_____
Applicant's Signature

Sworn to before me this __22ND__ day of __JUNE__ 2009

                                          James H. Barrett, Jr.
                                          Notary Public in and for the

JAMES H. BARRETT, JR.                     State of __MASSACHUSETTS__
Notary Public
COMMONWEALTH OF MASSACHUSETTS             County of __BRISTOL__
My Commission Expires
February 28, 2014                         My Commission Expires: __2/28/14__

BA216 (9904)                                                    MULTISTATE

R939 06/19/09 10:41 AM

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

# EXHIBIT C

Case Number: KC-2018-0495
Filed in Kent County Superior Court
Submitted: 5/23/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

**K/A**

# KORDE & ASSOCIATES, P.C.

## ATTORNEYS AT LAW

SERVING MASSACHUSETTS, NEW HAMPSHIRE, & RHODE ISLAND

May 4, 2018

9489 0090 0027 6062 5198 90

Ryan M. Cordeiro
38 Rock Street
Tiverton, RI 02878

## Addendum A

VIA FIRST CLASS MAIL &
CERTIFIED MAIL RETURN RECEIPT
REQUESTED NO.

Please reference our File #: 18-031944/Cordeiro

RE: Bank of America, N.A. dated June 22, 2009 and as recorded on June 22, 2009 at 11:49 am in Book 1250, Page 168 in the Records of Land Evidence in the Town of Tiverton, RI, as affected by a Loan Modification in Said Land Evidence Records in Book 1448, Page 191, as further effected by a Loan Modification recorded in Said Land Evidence Records in Book 1612, Page 278
Property Address: 38 Rock Street, Tiverton, RI 02878

Dear Sir/Madam:

Please be advised that I have been instructed by the Holder of the Mortgage to commence a foreclosure of the property at 38 Rock Street, Tiverton, RI 02878. The property will be sold at a public auction on June 28, 2018 at 10:00 AM on the premises of said 38 Rock Street, Tiverton, RI 02878.

A copy of the Notice of Sale, which is to be published in the Newport Daily News on June 6, 2018, June 13, 2018 and June 20, 2018 concerning this foreclosure is attached hereto.

THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. If, however, the debt secured by your mortgage has been discharged in bankruptcy, no demand for payment of the loan is being made and this letter is solely intended to advise you of the pending liquidation of the loan.

In the event that there is a deficiency resulting from said foreclosure, proceedings may be instituted against you for the purpose of collecting said deficiency.

If you have any questions regarding this matter, please contact my office.

Very truly yours,

Susan W. Cody

SWC/cc

900 CHELMSFORD STREET, SUITE 3102, LOWELL, MASSACHUSETTS 01851
PHONE: 978-256-1500 / FAX: 978-256-7615
HOURS OF OPERATION: 8:30AM – 5:30PM, EST MONDAY THRU FRIDAY

Case Number: PC-2019-0495
Filed in Providence/Bristol County Superior Court
Submitted: 5/28/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.



# KORDE & ASSOCIATES, P.C.

## ATTORNEYS AT LAW

SERVING MASSACHUSETTS, NEW HAMPSHIRE, & RHODE ISLAND

### NOTICE TO SERVICEMEMBERS

A servicemember on active duty or deployment or who has recently ceased such duty or
deployment has certain rights under subsection 34-27-4(d) of the Rhode Island general
laws set out below. To protect your rights if you are such a servicemember, you should
give written notice to the servicer of the obligation or the attorney conducting the
foreclosure, prior to the sale, that you are a servicemember on active duty or deployment
or who has recently ceased such duty or deployment. This notice may be given on your
behalf by your authorized representative. If you have any questions about this notice, you
should consult with an attorney.

Excerpt from Rhode Island General Laws Section 34-27-4:

(d) Foreclosure sales affecting servicemembers.-
   (1) The following definitions shall apply to this subsection and to subsection (e):
      (i) "Servicemember" means a member of the Army, Navy, Air Force, Marine Corps, or
      Coast Guard and members of the National Guard or Reserves called to active duty.
      (ii) "Active duty" has the same meaning as the term is defined in 10 U.S.C. sections
      12301 through 12304. In the case of a member of the National Guard, or Reserves "active
      duty" means and includes service under a call to active service authorized by the
      President or the Secretary of Defense for a period of time of more than thirty (30)
      consecutive days under 32 U.S.C. section 502(f), for the purposes of responding to a
      national emergency declared by the President and supported by federal funds.

   (2) This subsection applies only to an obligation on real and related personal property owned by
   a service member that:
      (i) Originated before the period of the servicemember's military service or in the case of
      a member of the National Guard or Reserves originated before being called into active
      duty and for which the servicemember is still obligated; and
      (ii) Is secured by a mortgage or other security in the nature of a mortgage.

   (3) Stay of right to foreclose by mortgage. -- Upon receipt of written notice from the mortgagor
   or mortgagor's authorized representative that the mortgagor is participating in active duty or
   deployment or that the notice as provided in subsection (e) was received within nine (9) months
   of completion of active duty or deployment, the mortgagee shall be barred from proceeding with
   the execution of sale of the property as defined in the notice until such nine (9) month period has
   lapsed or until the mortgagee obtains court approval in accordance with subdivision (d)(5)
   below.

   (4) Stay of proceedings and adjustment of obligation. -- In the event a mortgagee proceeds with
   foreclosure of the property during, or within nine (9) months after a servicemember's period of

900 CHELMSFORD STREET, SUITE 3102, LOWELL, MASSACHUSETTS 01851
PHONE: 978-256-1500 / FAX: 978-256-7615
HOURS OF OPERATION: 8:30AM – 5:30PM, EST MONDAY THRU FRIDAY

Case Number: KC-2018-0495
Filed in Kent County Superior Court
Submitted: 10/8/2018 2:26 PM
Envelope: 2052810
Reviewer: Dennis R.

DOCI  00001974
Bk:1  1686 Pg:1   52

active duty or deployment notwithstanding receipt of notice contemplated by subdivision (d)(3) above, the servicemember or his or her authorized representative may file a petition against the mortgagee seeking a stay of such foreclosure, after a hearing on such petition, and on its own motion, the court may:

    (i) Stay the proceedings for a period of time as justice and equity require; or
    (ii) Adjust the obligation as permitted by federal law to preserve the interests of all parties.

(5) Sale or foreclosure.- A sale, foreclosure or seizure of property for a breach of an obligation of a servicemember who is entitled to the benefits under subsection (d) and who provided the mortgagee with written notice permitted under subdivision (d)(3) shall not be valid if made during, or within nine (9) months after, the period of the servicemember's military service except:

    (i) Upon a court order granted before such sale, foreclosure or seizure after hearing on a petition filed by the mortgagee against such servicemember; or
    (ii) If made pursuant to an agreement of all parties.

(6) Penalties.- A mortgagee who knowingly makes or causes to be made a sale, foreclosure or seizure of property that is prohibited by subsection (d)(3) shall be fined the sum of one thousand dollars ($1,000), or imprisoned for not more than one year, or both. The remedies and rights provided hereunder are in addition to and do not preclude any remedy for wrongful conversion otherwise available under law to the person claiming relief under this section, including consequential and punitive damages.

(7) Any petition hereunder shall be commenced by action filed in the superior court for the county in which the property subject to the mortgage or other security in the nature of a mortgage is situated. Any hearings on such petition shall be conducted on an expedited basis following such notice and/or discovery as the court deems proper.

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 9/23/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.



# KORDE & ASSOCIATES, P.C.

## ATTORNEYS AT LAW

SERVING MASSACHUSETTS, NEW HAMPSHIRE, & RHODE ISLAND

9489 0090 0027 6062 5199 06

May 4, 2018

Rhode Island Housing
43 Jefferson Boulevard
Warwick, RI 02888

CERTIFIED MAIL RETURN RECEIPT
REQUESTED NO.

Please reference our File #: 18-031944/Cordeiro

Notice of Intent to Foreclose

RE:   Bank of America, N.A. dated June 22, 2009 and as recorded on June 22, 2009 at 11:49 am and in
      Book 1250, Page 168 in the Records of Land Evidence in the Town of Tiverton, RI, as affected
      by a Loan Modification in Said Land Evidence Records in Book 1448, Page 191, as further
      affected by a Loan Modification recorded in Said Land Evidence Records in Book 1612, Page
      278
      Property Address: 38 Rock Street, Tiverton, RI 02878

Dear Sir/Madam:

      Please be advised that I have been instructed by the Holder of the Mortgage to commence a
foreclosure of the property at 38 Rock Street, Tiverton, RI 02878. The property will be sold at a public
auction on June 28, 2018 at 10:00 AM on the premises of said 38 Rock Street, Tiverton, RI 02878.

      A copy of the Notice of Sale, which is to be published in the Newport Daily News on June 6,
2018, June 13, 2018 and June 20, 2018 concerning this foreclosure is attached hereto.

      If you have any questions regarding this matter, please contact my office.

Very truly yours,

Susan W. Cody

SWC/cc

900 CHELMSFORD STREET, SUITE 3102, LOWELL, MASSACHUSETTS 01851
PHONE: 978-256-1500 / FAX: 978-256-7615
HOURS OF OPERATION: 8:30AM – 5:30PM, EST MONDAY THRU FRIDAY

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 10/8/2018 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.



# KORDE & ASSOCIATES, P.C.

## ATTORNEYS AT LAW

SERVING MASSACHUSETTS, NEW HAMPSHIRE, & RHODE ISLAND

9489 0090 0027 6062 5199 13

May 4, 2018

North Tiverton Fire District
241 Hilton Street
Tiverton, RI 02878

CERTIFIED MAIL RETURN RECEIPT
REQUESTED NO.

Please reference our File #: 18-031944/Cordeiro

RE:   Bank of America, N.A. dated June 22, 2009 and as recorded on June 22, 2009 at 11:49 am and in
Book 1250, Page 168 in the Records of Land Evidence in the Town of Tiverton, RI, as affected
by a Loan Modification in Said Land Evidence Records in Book 1448, Page 191, as further
affected by a Loan Modification recorded in Said Land Evidence Records in Book 1612, Page
278
Property Address: 38 Rock Street, Tiverton, RI 02878

Dear Sir/Madam:

Please be advised that I have been instructed by the Holder of the Mortgage to commence a
foreclosure of the property at 38 Rock Street, Tiverton, RI 02878. The property will be sold at a public
auction on June 28, 2018 at 10:00 AM on the premises of said 38 Rock Street, Tiverton, RI 02878.

A copy of the Notice of Sale, which is to be published in the Newport Daily News on June 6,
2018, June 13, 2018 and June 20, 2018 concerning this foreclosure is attached hereto.

If you have any questions regarding this matter, please contact my office.

Very truly yours,

Susan W. Cody

SWC/cc

900 CHELMSFORD STREET, SUITE 3102, LOWELL, MASSACHUSETTS 01851
PHONE: 978-256-1500 / FAX: 978-256-7615
HOURS OF OPERATION: 8:30AM – 5:30PM, EST MONDAY THRU FRIDAY

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/23/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

**MORTGAGEE'S SALE**
38 Rock Street, Tiverton, RI 02878

The premises described in the mortgage will be sold subject to all encumbrances and prior liens on June 28, 2018 at 10:00 AM on the premises, by virtue of the power of sale contained in a mortgage from Ryan M. Cordeiro dated June 22, 2009 and recorded in Book 1250, Page 168 in the Records of Land Evidence in the Town of Tiverton, RI as affected by Loan Modification Agreements recorded in the Said Land Evidence Records in Book 1448, Page 191and In Book 1612, Page 278, the conditions of said mortgage having been broken.

$5,000.00 in cash, certified or bank check is required to bid. Other terms will be announced at the sale.

By order of the Mortgagee which gives notice of its intention to bid at such sale or any postponement or adjournment thereof.

KORDE & ASSOCIATES, P.C.
Attorneys for the Holder of the Mortgage
900 Chelmsford Street
Suite 3102
Lowell, MA 01851
(978) 256-1500

(6/6/2018, 6/13/2018, 6/20/2018)

18-031944

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

# EXHIBIT D

Case Number: KC-2018-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

DOC# 00001974
Bk: 1686 Pg: 44

## STATUTORY FORM OF FORECLOSURE DEED
## UNDER POWER OF SALE IN MORTGAGE

Carrington Mortgage Services, LLC, with a place of business located at 1600 South Douglass Road, Suite 200-A, Anaheim, California 92806, holder of a mortgage by Ryan M. Cordeiro dated June 22, 2009, and recorded in the Records of Land Evidence on June 22, 2009 in Tiverton, State of Rhode Island, in Land Evidence Book 1250, Page 168, as affected by Loan Modification Agreements recorded in said Land Evidence Records in Book 1448, Page 191, and in Book 1612, Page 278, by the power conferred by said mortgage and by every other power it thereunto enabling, for Two Hundred Four Thousand Three Hundred Forty-Two Dollars and Fifty-One Cents ($204,342.51) paid, grants to Carrington Mortgage Services, LLC, 1600 South Douglass Road, Suite 200-A, Anaheim, California 92806, the premises conveyed by said mortgage, described as follows:

A certain lot or tract of land situated on the Easterly side of Rock Street in the Town of Tiverton, County of Newport, State of Rhode Island, and bounded and described as follows:

NORTHERLY by land now or formerly of Zenon St. Laurent, one hundred and twenty-five (125) feet;
EASTERLY by land now or formerly of Ponta Delgada Patriots Club, Inc. fifty (50) feet;
SOUTHERLY by land now or formerly of Peter Correa, one hundred and twenty-five (125) feet; and
WESTERLY by Rock Street, fifty (50) feet.

Containing twenty-two and 95/100 square rods of land, be the same more or less, or however otherwise the same may be bounded or described.

Being Lot Sixteen (16) in Section "B" Shove Mill Plan.

Conveyance is made subject to local, state and federal taxes, assessments and charges, if any, which would constitute a prior lien thereon; and to restrictions, covenants and easements of record, if any.

This transfer of property is such that there are no net proceeds subject to the withholding provisions of R.I.G.L. 44-30-71.3 because there was no net gain or surplus proceeds derived from the foreclosure sale.

IN WITNESS WHEREOF Carrington Mortgage Services, LLC has caused this instrument to be executed by its duly authorized signor this ____ day of ____ July ____, 2018.

Assessors Plat 102, Lot 139
Property Address: 32 Rock Street, Tiverton, RI 02878
16-039944 / PC01

Case Number: PC-2018-0495
Filed in Kent County Superior Court
Submitted: 5/22/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

Carrington Mortgage Services, LLC

By: _____

Name: ~~Candace Fraley~~
Title: Vice President Post Sale
Carrington Mortgage Services, LLC

STATE OF ___California___

COUNTY OF: ___Orange___

On this _24th_ day of ___JUN___, 2018 before me, the undersigned notary public, personally appeared ___Candace Fraley___, of Carrington Mortgage Services, LLC proved to me through satisfactory evidence of identification, which was personal knowledge, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that (s)he signed it voluntarily for its stated purpose and as the free act and deed of Carrington Mortgage Services, LLC.

Notary Public: _____
My commission expires: ___Rosinda Hernandez___

ROSINDA HERNANDEZ
Notary Public - California
Orange County
Commission # 2136399
My Comm. Expires Mar 30, 2022

Assessors Plat 102, Lot 139
Property Address: 38 Rock Street, Tiverton, RI 02878
18-031944 / FC01

Case Number: 2018-1-0495
Filed in Kings County Superior Court
Submitted: 5/23/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

DOC# 00601974
Bk: 1686 Pg: 46

## ACKNOWLEDGMENT

> A notary public or other officer completing
> this certificate verifies only the identity of
> the individual who signed the document to
> which this certificate is attached, and not
> the truthfulness, accuracy, or validity of
> that document.

State of California

County of _____ Orange _____ )

On _____ JUL 2 6 2018 _____ before me _____ Candace Fraley, Rosinda Hernandez
(insert name and title of the officer)
personally appeared _____ Candace Fraley _____
who proved to me on the basis of satisfactory evidence to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies) as the free act
and deed of the grantor, and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the
instrument as their free act and deed.

I certify under PENALTY OF PERJURY under the laws of the State of California that
the foregoing paragraph is true and correct.

WITNESS my hand and official seal

Signature _____

Notary Name: Rosinda Hernandez
Commission Expire 03/30/2022

[Notary Seal:
ROSINDA HERNANDEZ
Notary Public - California
Orange County
Commission # 2236299
My Comm. Expires Mar 30, 2022]

Assessors Plat 102, Lot 139
Property Address: 38 Rock Street, Tiverton, RI 02878
19-031944 / PC01

Case Number: NC-2018-0495
Filed in Newport County Superior Court
Submitted: 6/8/2018 2:28 PM
Envelope: 2052810
Reviewer: Dennis R.

DOC# 00001974
Bk: 1686 Pg: 17

## AFFIDAVIT OF SALE UNDER
## POWER OF SALE IN MORTGAGE

I, _____ Candace Fraley _____ (name), _Vice President, Post Sale_ (title) of Carrington Mortgage Services, LLC the Grantor named in the foregoing deed, make oath and say that the principal and interest obligations mentioned in the mortgage above-referred to were not paid or tendered or performed when due or prior to the date of sale, and that The Law Offices of Korde & Associates, P.C. caused to be published on June 6, 2018, June 13, 2018 and June 20, 2018 in the Newport Daily News, a public newspaper published in Newport in accordance with the provisions of said mortgage, a notice of said sale of which the following is a true copy:

**MORTGAGEE'S SALE**
**38 Rock Street,**
**Tiverton, RI 02878**

The premises described in the mortgage will be sold subject to all encumbrances and prior liens on June 28, 2018 at 10:00 AM on the premises, by virtue of the power of sale contained in a mortgage from Ryan M. Cordeiro dated June 22, 2009 and recorded in Book 1250, Page 168 in the Records of Land Evidence in the Town of Tiverton, RI as affected by Loan Modification Agreements recorded in the Said Land Evidence Records in Book 1448, Page 191and in Book 1612, Page 278, the conditions of said mortgage having been broken. $5,000.00 in cash, certified or bank check is required to bid. Other terms will be announced at the sale. By order of the Mortgagee which gives notice of its intention to bid at such sale or any postponement or adjournment thereof.

**KORDE & ASSOCIATES, P.C.**
Attorneys for the Holder of the Mortgage
900 Chelmsford Street
Suite 3102

Assessors Plat 102, Lot 139
Property Address: 38 Rock Street, Tiverton, RI 02878
18-039944 / FC01

Case Number: PC-2019-0495
Filed in Providence/Bristol County Superior Court
Submitted: 1/22/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

I the undersigned make oath and say that pursuant to R.I.G.L. 34-11-22 and 34-27-4, the Law Office of Korde & Associates, P.C. mailed, or caused to be mailed, on May 4, 2018 by certified mail, return receipt requested, written notice of the time and place of foreclosure sale to the record owner(s) as required by R.I.G.L. 34-11-22 and 34-27-4. A copy of said notice is made a part hereof as Addendum "A".

Pursuant to said notice, at the time and place therein appointed, Carrington Mortgage Services, LLC sold the mortgaged premises at public auction by Richard Jumpp of The Jumpp Company an auctioneer duly licensed by the State of Rhode Island to Carrington Mortgage Services, LLC of 1600 South Douglass Road, Suite 200-A, Anaheim, California 92806, for Two Hundred Four Thousand Three Hundred Forty-Two Dollars and Fifty-One Cents ($204,342.51) by he/she/them paid, being the highest bid made for said premises at said auction.

To the best of my knowledge, information, and belief the record owner(s) of the property described in said mortgage Ryan M. Cordeiro, was not "a person in the Military Service" of the United States of America, as defined by the Soldiers' and Sailors' Civil Relief Act of 1940 and the Servicemembers Civil Relief Act, as amended, and was not in the "Military Service" as defined by said Act at the time of the commencement of the within foreclosure proceedings or at the time of sale under the power given by said mortgage or at any time within the period of twelve months immediately preceding said sale.

I further make affidavit and say that the above facts have been ascertained after investigation duly made and that I am familiar with the contents of said Soldiers' and Sailors' Civil Relief Act of 1940 and the Servicemembers Civil Relief Act, as amended.

I further on oath say that pursuant to R.I.G.L. 34-27-4(c) and (d), the Law Office of Korde & Associates, P.C. mailed, or caused to be mailed, on May 4, 2018 by first class mail and by certified mail, return receipt requested, written notice as required by R.I.G.L. 34-27-4(c) and (d).

Carrington Mortgage Services, LLC mailed, or caused to be mailed on December 11, 2017 by first class mail and certified mail, return receipt requested, written notice of the Mortgagors' right to a mediation conference as required by R.I. G.L. 34-27-3.2 in English, Spanish and Portuguese Languages.

Carrington Mortgage Services, LLC

By:

Name:   Candace Fraley
Title:   Vice President Post Sale
         Carrington Mortgage Services, LLC

State of:
County of:

On this _____ day of _____, 2018, before me, the undersigned notary public, personally appeared _____, of Carrington Mortgage Services, LLC proved to me through satisfactory evidence of identification, which was personal knowledge, to be the person who signed the preceding or attached document in my presence, and who swore or affirmed to me that the contents of the document are truthful to the best of (his) (her) knowledge and belief.

See Attached

Notary Public:
My commission expires:

Assessors Plat 102, Lot 139
Property Address: 38 Rock Street, Tiverton, RI 02878
18-031644 / FC01

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

DOC: 00001974
Bk: 1686 Pg: 49

# CALIFORNIA JURAT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document, to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of Orange

Subscribed and sworn to (or affirmed) before me on this 24th day of July 2018, by Candace Fraley, proved to me on the basis of satisfactory evidence to be the person who appeared before me.

ROSINDA HERNANDEZ
Notary Public - California
Orange County
Commission # 2136399
My Comm. Expires Mar 30, 2022

_____                    (Notary Seal)

Rosinda Hernandez

## OPTIONAL INFORMATION

### DESCRIPTION OF THE ATTACHED DOCUMENT

Jurat

_____
(Title or description of attached document)

_____
(Title or description of attached document continued)

Number of Pages _____ Document Date _____

_____
(Additional information)

### INSTRUCTIONS FOR COMPLETING THIS FORM

The wording of all Jurats completed in California after January 1, 2008 must be in the form as set forth within this Jurat. There are no exceptions. If a Jurat to be completed does not follow this form, the notary must correct the verbiage by using a jurat stamp containing the correct wording or attaching a separate jurat form such as this one which does contain proper wording. In addition, the notary must require an oath or affirmation from the document signer regarding the truthfulness of the contents of the document. The document must be signed AFTER the oath or affirmation. If the document was previously signed, it must be re-signed in front of the notary public during the jurat process.

• State and County information must be the State and County where the document signer(s) personally appeared before the notary public.
• Date of notarization must be the date that the signer(s) personally appeared which must also be the same date the jurat process is completed.
• Print the name(s) of document signer(s) who personally appear at the time of notarization.
• Signature of the notary public must match the signature on file with the office of the county clerk.
• The notary seal impression must be clear and photographically reproducible. Impression must not cover text or lines. If seal impression smudges, re-seal if a sufficient area permits, otherwise complete a different jurat form.
  ◆ Additional information is not required but could help to ensure this jurat is not misused or attached to a different document.
  ◆ Indicate title or type of attached document, number of pages and date.
• Securely attach this document to the signed document.

Case Number: KC-2018-258 PC-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.



## KORDE & ASSOCIATES, P.C.
### ATTORNEYS AT LAW

SERVING MASSACHUSETTS, NEW HAMPSHIRE, & RHODE ISLAND

May 4, 2018

9489 0090 0027 6062 5198 90

Ryan M. Cordeiro
38 Rock Street
Tiverton, RI 02878

**Addendum A**

VIA FIRST CLASS MAIL &
CERTIFIED MAIL RETURN RECEIPT
REQUESTED NO.

Please reference our File #: 18-031944/Cordeiro

RE:  Bank of America, N.A. dated June 22, 2009 and as recorded on June 22, 2009 at 11:49 am in
Book 1250, Page 168 in the Records of Land Evidence in the Town of Tiverton, RI, as affected
by a Loan Modification in Said Land Evidence Records in Book 1448, Page 191, as further
affected by a Loan Modification recorded in Said Land Evidence Records in Book 1612, Page
278
Property Address: 38 Rock Street, Tiverton, RI 02878

Dear Sir/Madam:

Please be advised that I have been instructed by the Holder of the Mortgage to commence a
foreclosure of the property at 38 Rock Street, Tiverton, RI 02878. The property will be sold at a public
auction on June 28, 2018 at 10:00 AM on the premises of said 38 Rock Street, Tiverton, RI 02878.

A copy of the Notice of Sale, which is to be published in the Newport Daily News on June 6,
2018, June 13, 2018 and June 20, 2018 concerning this foreclosure is attached hereto.

THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED
WILL BE USED FOR THAT PURPOSE. If, however, the debt secured by your mortgage has been
discharged in bankruptcy, no demand for payment of the loan is being made and this letter is solely
intended to advise you of the pending liquidation of the loan.

In the event that there is a deficiency resulting from said foreclosure, proceedings may be
instituted against you for the purpose of collecting said deficiency.

If you have any questions regarding this matter, please contact my office.

Very truly yours,

Susan W. Cody

SWC/co

900 CHELMSFORD STREET, SUITE 3102, LOWELL, MASSACHUSETTS 01851
PHONE: 978-256-1500 / FAX: 978-256-7615
HOURS OF OPERATION: 9:30AM – 5:30PM, EST MONDAY THRU FRIDAY

Case Number: PC-2018-0495
Filed in Providence/Bristol County Superior Court
Submitted: 5/23/2018 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.



## KORDE & ASSOCIATES, P.C.

### ATTORNEYS AT LAW

SERVING MASSACHUSETTS, NEW HAMPSHIRE, & RHODE ISLAND

#### NOTICE TO SERVICEMEMBERS

A servicemember on active duty or deployment or who has recently ceased such duty or deployment has certain rights under subsection 34-27-4(d) of the Rhode Island general laws set out below. To protect your rights if you are such a servicemember, you should give written notice to the servicer of the obligation or the attorney conducting the foreclosure, prior to the sale, that you are a servicemember on active duty or deployment or who has recently ceased such duty or deployment. This notice may be given on your behalf by your authorized representative. If you have any questions about this notice, you should consult with an attorney.

Excerpt from Rhode Island General Laws Section 34-27-4:

(d) Foreclosure sales affecting servicemembers.-

    (1) The following definitions shall apply to this subsection and to subsection (e):
        (i) "Servicemember" means a member of the Army, Navy, Air Force, Marine Corps, or Coast Guard and members of the National Guard or Reserves called to active duty.
        (ii) "Active duty" has the same meaning as the term is defined in 10 U.S.C. sections 12301 through 12304. In the case of a member of the National Guard, or Reserves "active duty" means active service under a call to active service authorized by the President or the Secretary of Defense for a period of time of more than thirty (30) consecutive days under 32 U.S.C. section 502(f), for the purposes of responding to a national emergency declared by the President and supported by federal funds.

    (2) This subsection applies only to an obligation on real and related personal property owned by a service member that:
        (i) Originated before the period of the servicemember's military service or in the case of a member of the National Guard or Reserves originated before being called into active duty and for which the servicemember is still obligated; and
        (ii) Is secured by a mortgage or other security in the nature of a mortgage.

    (3) Stay of right to foreclose by mortgagee. -- Upon receipt of written notice from the mortgagor or mortgagor's authorized representative that the mortgagor is participating in active duty or deployment or that the notice as provided in subsection (e) was received within nine (9) months of completion of active duty or deployment, the mortgagee shall be barred from proceeding with the execution of sale of the property as defined in the notice until such nine (9) month period has lapsed or until the mortgagee obtains court approval in accordance with subdivision (d)(5) below.

    (4) Stay of proceedings and adjustment of obligation. -- In the event a mortgagee proceeds with foreclosure of the property during, or within nine (9) months after a servicemember's period of

900 CHELMSFORD STREET, SUITE 3102, LOWELL, MASSACHUSETTS 01851
PHONE: 978-256-1500 / FAX: 978-256-7615
HOURS OF OPERATION: 8:30AM -- 5:30PM, EST MONDAY THRU FRIDAY

Case Number: KC-2018-0495
Filed in Kent County Superior Court
Submitted: 6/4/2018 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

DOC: 00001574
Bk: 1686 Pg: 52

active duty or deployment notwithstanding receipt of notice contemplated by subdivision (d)(3) above, the servicemember or his or her authorized representative may file a petition against the mortgage seeking a stay of such foreclosure, after a hearing on such petition, and on its own motion, the court may:

(i) Stay the proceedings for a period of time as justice and equity require; or
(ii) Adjust the obligation as permitted by federal law to preserve the interests of all parties.

(5) Sale or foreclosure.- A sale, foreclosure or seizure of property for a breach of an obligation of a servicemember who is entitled to the benefits under subsection (d) and who provided the mortgagee with written notice permitted under subdivision (d)(3) shall not be valid if made during, or within nine (9) months after, the period of the servicemember's military service except:

(i) Upon a court order granted before such sale, foreclosure or seizure after hearing on a petition filed by the mortgagee against such servicemember; or
(ii) If made pursuant to an agreement of all parties.

(6) Penalties.- A mortgagee who knowingly makes or causes to be made a sale, foreclosure or seizure of property that is prohibited by subsection (d)(3) shall be fined the sum of one thousand dollars ($1,000), or imprisoned for not more than one year, or both. The remedies and rights provided hereunder are in addition to and do not preclude any remedy for wrongful conversion otherwise available under law to the person claiming relief under this section, including consequential and punitive damages.

(7) Any petition hereunder shall be commenced by action filed in the superior court for the county in which the property subject to the mortgage or other security in the nature of a mortgage is situated. Any hearings on such petition shall be conducted on an expedited basis following such notice and/or discovery as the court deems proper.

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 6/28/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

**KORDE & ASSOCIATES, P.C.**

ATTORNEYS AT LAW

SERVING MASSACHUSETTS, NEW HAMPSHIRE, & RHODE ISLAND

9489 0090 0027 6062 5199 06

May 4, 2018

Rhode Island Housing
43 Jefferson Boulevard
Warwick, RI 02888

CERTIFIED MAIL RETURN RECEIPT
REQUESTED NO.

Please reference our File #: 18-031944/Cordeiro

Notice of Intent to Foreclose

RE:   Bank of America, N.A. dated June 22, 2009 and as recorded on June 22, 2009 at 11:49 am and in
      Book 1250, Page 168 in the Records of Land Evidence in the Town of Tiverton, RI, as affected
      by a Loan Modification in Said Land Evidence Records in Book 1448, Page 191, as further
      affected by a Loan Modification recorded in Said Land Evidence Records in Book 1612, Page
      278
      Property Address: 38 Rock Street, Tiverton, RI 02878

Dear Sir/Madam:

      Please be advised that I have been instructed by the Holder of the Mortgage to commence a
foreclosure of the property at 38 Rock Street, Tiverton, RI 02878. The property will be sold at a public
auction on June 28, 2018 at 10:00 AM on the premises of said 38 Rock Street, Tiverton, RI 02878.

      A copy of the Notice of Sale, which is to be published in the Newport Daily News on June 6,
2018, June 13, 2018 and June 20, 2018 concerning this foreclosure is attached hereto.

      If you have any questions regarding this matter, please contact my office.

Very truly yours,

Susan W. Cody

SWC/cc

900 CHELMSFORD STREET, SUITE 3102, LOWELL, MASSACHUSETTS 01851
PHONE: 978-256-1500 / FAX: 978-256-7615
HOURS OF OPERATION: 8:30AM – 5:30PM, EST MONDAY THRU FRIDAY

Case Number: NC-2018-0495
Filed in Newport County Superior Court
Submitted: 5/2/2018 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.



## KORDE & ASSOCIATES, P.C.
### ATTORNEYS AT LAW

SERVING MASSACHUSETTS, NEW HAMPSHIRE, & RHODE ISLAND

May 4, 2018

9489 0090 0027 6062 5199 13

North Tiverton Fire District                    CERTIFIED MAIL RETURN RECEIPT
241 Hilton Street                               REQUESTED NO.
Tiverton, RI 02878

                                    Please reference our File #: 18-031944/Cordeiro

RE:    Bank of America, N.A. dated June 22, 2009 and as recorded on June 22, 2009 at 11:49 am and in
       Book 1250, Page 168 in the Records of Land Evidence in the Town of Tiverton, RI, as affected
       by a Loan Modification in Said Land Evidence Records in Book 1448, Page 191, as further
       affected by a Loan Modification recorded in Said Land Evidence Records in Book 1612, Page
       278
       Property Address: 38 Rock Street, Tiverton, RI 02878

Dear Sir/Madam:

       Please be advised that I have been instructed by the Holder of the Mortgage to commence a
foreclosure of the property at 38 Rock Street, Tiverton, RI 02878. The property will be sold at a public
auction on June 28, 2018 at 10:00 AM on the premises of said 38 Rock Street, Tiverton, RI 02878.

       A copy of the Notice of Sale, which is to be published in the Newport Daily News on June 6,
2018, June 13, 2018 and June 20, 2018 concerning this foreclosure is attached hereto.

       If you have any questions regarding this matter, please contact my office.

Very truly yours,

Susan W. Cody

SWC/cc

900 CHELMSFORD STREET, SUITE 3102, LOWELL, MASSACHUSETTS 01851
PHONE: 978-256-1500 / FAX: 978-256-7615
HOURS OF OPERATION: 8:30AM – 5:30PM, EST MONDAY THRU FRIDAY

Case Number: KC-2018-0495
Filed in Kent County Superior Court
Submitted: 6/28/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

MORTGAGEE'S SALE
38 Rock Street, Tiverton, RI 02878

The premises described in the mortgage will be sold subject to all encumbrances and prior liens on June 28, 2018 at 10:00 AM on the premises, by virtue of the power of sale contained in a mortgage from Ryan M. Cordeiro dated June 22, 2009 and recorded in Book 1250, Page 168 in the Records of Land Evidence in the Town of Tiverton, RI as affected by Loan Modification Agreements recorded in the Said Land Evidence Records in Book 1448, Page 191 and in Book 1612, Page 278, the conditions of said mortgage having been broken.

$5,000.00 in cash, certified or bank check is required to bid. Other terms will be announced at the sale.

By order of the Mortgagee which gives notice of its intention to bid at such sale or any postponement or adjournment thereof.

KORDE & ASSOCIATES, P.C.
Attorneys for the Holder of the Mortgage
900 Chelmsford Street
Suite 3102
Lowell, MA 01851
(978) 256-1500

(6/6/2018, 6/13/2018, 6/20/2018)

18-031944

Case Number: KC-2018-0495
Filed in Kent County Superior Court
Submitted: 10/8/2018 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

DOC# 00001974
Bk: 1686 Pg: 56

## AFFIDAVIT OF COMPLIANCE WITH R.I. GEN. LAWS § 34-27-3.2 (m)

STATE OF California

ss: Anaheim

COUNTY OF Orange

Personally appeared, who being duly sworn, affirms under oath that:

1. My name is _____ Candace Fraley and I am _____ Vice President, Post Sale (title) of Carrington Mortgage Services, LLC, named in the foregoing deed. I am authorized to execute this Affidavit on behalf of Carrington Mortgage Services, LLC, and the statements made in this Affidavit are made upon my personal knowledge based on a review of the business records of Carrington Mortgage Services, LLC. I am over the age of 18, and I am fully competent to testify to the matters contained herein.

2. Carrington Mortgage Services, LLC is the holder of a mortgage by Ryan M. Cordeiro dated June 22, 2009, and recorded in the Records of Land Evidence on June 22, 2009 in Tiverton, State of Rhode Island, in Land Evidence Book 1250, Page 168 ("Mortgage").

3. In my capacity as stated above, I have access to Carrington Mortgage Services, LLC's business records, including the business records for and relating to the Mortgage. I make this Affidavit based upon my review of those records relating to the Mortgage and from my own personal knowledge of how they are kept and maintained. The records for the Mortgage are maintained by Carrington Mortgage Services, LLC in the course of its regularly conducted business activities and are made at or near the time of the event, by or from information transmitted by a person with knowledge. It is the regular practice of Carrington Mortgage Services, LLC to keep such records in the ordinary course of a regularly conducted business activity.

4. I reviewed and relied upon Carrington Mortgage Services, LLC's business records for the statements made in this Affidavit.

5. Carrington Mortgage Services, LLC mailed, or caused to be mailed on December 11, 2017 by first class mail and certified mail, return receipt requested, written notice of the Mortgagors' right to a mediation conference as required by R.I. G.L. 34-27-3.2 in English, Spanish and Portuguese Languages. Carrington Mortgage Services, LLC designated an authorized representative to participate in the Mediation Conference on its behalf. Said representative had authority to agree to a workout agreement on behalf of Carrington Mortgage Services, LLC. Carrington Mortgage Services, LLC made reasonable efforts to respond timely to requests for information from the Mediation Coordinator, Mortgagor, and/or counselor assisting the Mortgagor. Following notice of the mortgagors' right to a mediation conference, the following occurred [check the applicable outcome as indicated on the Mediation Coordinator's Certificate]:

☒ The Mediation Coordinator determined that after two attempts by the Mediation Coordinator to contact the Mortgagor and Owner, the Mortgagor failed to respond to the requests to appear for the Mediation Conference or otherwise participate in the Mediation Conference.

☐ The Mediation Coordinator determined that the Mortgagor and Owner failed to comply with the requirements of R.I. Gen. Laws § 34-27-3.2.

Assessors Plat 102, Lot 139
Property Address: 38 Rock Street, Tiverton, RI 02878
(B-G)1945 / PG01

was properly served upon the Mortgagor and Owner of the Residential Real Estate

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

DOC# 00001976
DKT 1888 Pg1    58

# CALIFORNIA JURAT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document, to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of Orange

Subscribed and sworn to (or affirmed) before me on this 24ᵗʰ day of July 2018, by Candace Fraley, proved to me on the basis of satisfactory evidence to be the person who appeared before me.

ROSINDA HERNANDEZ
Notary Public - California
Orange County
Commission # 2216199
My Comm. Expires Mar 30, 2022

(Notary Seal)

Rosinda Hernandez

## OPTIONAL INFORMATION

### INSTRUCTIONS FOR COMPLETING THIS FORM

*The wording of all Jurats completed in California after January 1, 2008 must be in the form as set forth within this Jurat. There are no exceptions. If a Jurat to be completed does not follow this form, the notary must correct the verbiage by using a jurat stamp containing the correct wording or attaching a separate jurat form such as this one which does contain proper wording. In addition, the notary must require an oath or affirmation from the document signer regarding the truthfulness of the contents of the document. The document must be signed AFTER the oath or affirmation. If the document was previously signed, it must be re-signed in front of the notary public during the jurat process.*

#### DESCRIPTION OF THE ATTACHED DOCUMENT

Juraat
(Title or description of attached document)

(Title or description of attached document continued)

Number of Pages _____ Document Date _____

(Additional information)

- State and County information must be the State and County where the document signer(s) personally appeared before the notary public.
- Date of notarization must be the date that the signer(s) personally appeared which must also be the same date the jurat process is completed.
- Print the name(s) of document signer(s) who personally appear at the time of notarization.
- Signature of the notary public must match the signature on file with the office of the county clerk.
- The notary seal impression must be clear and photographically reproducible. Impression must not cover text or lines. If seal impression smudges, re-seal if a sufficient area permits, otherwise complete a different jurat form.
  - ◆ Additional information is not required but could help to ensure this jurat is not misused or attached to a different document.
  - ◆ Indicate title or type of attached document, number of pages and date.
- Securely attach this document to the signed document

Case Number: KC-2018-1495
Filed in Kent County Superior Court
Submitted: 12/28/2018 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

DOC# 00001974
Bk: 1686 Pg: 59

## AFFIDAVIT OF COMPLIANCE WITH CONDITIONS
## PRECEDENT TO ACCELERATION AND SALE

Property Address:    38 Rook Street
                     Tiverton, Rhode Island

Mortgagor:           Ryan M. Cordeiro

Mortgage:            Bank of America, N.A.

Foreclosing Mortgagee:  Carrington Mortgage Services, LLC

The undersigned, _____Candace Fraley_____, having personal knowledge of the facts
herein stated, under oath deposes and says as follows:

1.  I am an officer or employee of Carrington Mortgage Services, LLC, where I hold the
    office or title of ____Vice President, Post Sale____, Carrington Mortgage Services,
    LLC, is the current servicer of the above-referenced mortgage loan.

2.  In the regular course of my job responsibilities, I am familiar with **Carrington Mortgage
    Services, LLC's** business processes and procedures and the methods by which
    **Carrington Mortgage Services, LLC's** business records are made and maintained. I
    have acquired personal knowledge of the information contained in this affidavit as a
    result of my review of **Carrington Mortgage Services, LLC's** business records
    pertaining to the above-referenced mortgage, which include data compilations,
    electronically imaged documents, and servicing and loan payment histories. These
    records are reliable because they are made at or near the time of the activity and
    transactions reflected in the records, by or from information transmitted by persons with
    knowledge of the activity and transactions, and are kept in the course of **Carrington
    Mortgage Services, LLC's** regularly conducted business activities. To the extent records
    related to the loan come from another entity, those records have been integrated into and
    are now a part of **Carrington Mortgage Services, LLC's** business records maintained in
    the ordinary course, and have been relied on by **Carrington Mortgage Services, LLC.** It
    is the regular practice of **Carrington Mortgage Services, LLC,** to make and maintain
    these records as part of its mortgage servicing obligations and operations.

3.  Based upon my review of the business records of Carrington Mortgage Services, LLC, I
    certify that prior to accelerating the above-referenced mortgage loan:  [Check One]

    ☐  Notice(s) of Default to Mortgagor(s) has/have been given prior to acceleration by
       the then holder of the note secured by said mortgage, or by the holder's duly
       authorized agent, in strict compliance with the notice requirements set forth in the
       mortgage;

    ☒  All notices, requirements and conditions precedent were satisfied in strict
       compliance with the terms of the mortgage.

Assessors Plat 102, Lot 139
Property Address: 38 Rock Street, Tiverton, RI 02878
18-013544 / FC01

Case Number: PC-2018-7495
Filed in Kent County Superior Court
Submitted: 1/23/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

Signed under the pains and penalties of perjury this 24th day of Jun, 2018

Carrington Mortgage Services, LLC

By:

Name: Candace Fraley
Title: Vice President Post Sale
Carrington Mortgage Services, LLC

STATE OF _____

_____, SS

On this _____ day of _____, 2018, before me, the undersigned notary public, personally appeared _____ (name of document signer), proved to me through satisfactory evidence of identification, which were _____, to be the person who signed the preceding or attached document in my presence, and who swore or affirmed to me that the contents of the document are truthful and accurate to the best of (his) (her) knowledge and belief.

See Attached

Notary Public
Print Name
My Commission Expires:

Assessors Plat 102, Lot 139
Property Address: 38 Rock Street, Tiverton, RI 02878
18-031844 / FC01

Case Number: KC2013-0495
Filed in Kern County Superior Court
Printed: 10/8/2018 2:26 PM
Submitted: 2/7/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

DOC: 00001974
Ret 1686 Pat    61

> A notary public or other officer completing this
> certificate verifies only the identity of the individual
> who signed the document, to which this certificate is
> attached, and not the truthfulness, accuracy, or
> validity of that document.

## CALIFORNIA JURAT

State of California

County of Orange

Subscribed and sworn to (or affirmed) before me on this 24th day of July 2018, by Candace Fraley, proved

to me on the basis of satisfactory evidence to be the person who appeared before me.

_____

Rosinda Hernandez

ROSINDA HERNANDEZ
Notary Public • California
Orange County
Commission # 2236199
My Comm. Expires Mar 30, 2021

(Notary Seal)

## OPTIONAL INFORMATION

**INSTRUCTIONS FOR COMPLETING THIS FORM**

*The wording of all Jurats completed in California after January 1, 2008 must be in the form as set forth within this Jurat. There are no exceptions. If a Jurat to be completed does not follow this form, the notary must correct the verbiage by using a jurat stamp containing the correct wording or attaching a separate jurat form such as this one which does contain proper wording. In addition, the notary must require an oath or affirmation from the document signer regarding the truthfulness of the contents of the document. The document must be signed AFTER the oath or affirmation. If the document was previously signed, it must be re-signed in front of the notary public during the jurat process.*

- State and County information must be the State and County where the document signer(s) personally appeared before the notary public.
- Date of notarization must be the date that the signer(s) personally appeared which must also be the same date the jurat process is completed.
- Print the name(s) of document signer(s) who personally appear at the time of notarization.
- Signature of the notary public must match the signature on file with the office of the county clerk.
   - The notary seal impression must be clear and photographically reproducible. Impression must not cover text or lines. If seal impression smudges, re-seal if a sufficient area permits, otherwise complete a different jurat form.
      - Additional information is not required but could help to ensure this jurat is not misused or attached to a different document.
      - Indicate title or type of attached document, number of pages and date.
- Securely attach this document to the signed document

**DESCRIPTION OF THE ATTACHED DOCUMENT**

Jurat
_____
(Title or description of attached document)

_____
(Title or description of attached document continued)

Number of Pages _____ Document Date_____

_____
(Additional information)

Case Number: C-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 1/10/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

DOC: 00001974
Bk: 1626 Pg: 52

APPENDIX C

CERTIFICATE OF COMPLIANCE WITH MEDIATION REQUIREMENT
PURSUANT TO R.I. GEN. LAWS § 34-27-3.2

I, William Martinelli, of Rhode Island Housing, certify as follows:

1. Carrington Mortgage Services, LLC is the holder of the mortgage given by Ryan M
   Cordeiro, located at 38 Rock Street, Tiverton, RI 02878 (the "Mortgage").

2. Ryan M Cordeiro was properly served with the Notice of Mediation Conference pursuant to
   R.I. Gen. Laws § 34-27-3.2.

3. Rhode Island Housing served as the Mediation Coordinator defined in R.I. Gen. Laws §
   34-27-3.2 and Department of Business Regulation Banking Regulation 5 regarding the
   Mortgagee's potential foreclosure proceedings.

4. Carrington Mortgage Services, LLC has paid all fees and penalties required under R.I. Gen.
   Laws § 34-27-3.2 subsections (d)(1) and (f).

5. For the reasons set forth below, the Mortgagee is authorized to proceed with the foreclosure
   action, including recording of the foreclosure deed [check one box below]:

   ☒ After two attempts by the Agency to contact the Mortgagor, the Mortgagor failed to
     respond to the request of the Agency to appear for the Mediation Conference or
     otherwise participate in the Mediation Conference.
   ☐ The Mortgagor failed to comply with the requirements of R.I. Gen. Laws § 34-27-3.2.
   ☐ The parties been unable to reach an agreement to renegotiate the loan in order to avoid a
     foreclosure through the Mediation Conference, despite the Mortgagee's good faith
     efforts as noted on Attachment 1.

6. I am authorized by the Agency to issue this Certificate.

William Martinelli
Mediation Coordinator
February 14, 2018

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 8/28/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

RECEIVED FOR RECORD
Tiverton,R.I.
NANCY L. MELLO TOWN CLERK
Aug 06,2018 0:33P

DOC# 00001974
Bk: 1686 Pg: 63

ATTACHMENT 1

Good Faith Determination

The Mortgagee, or its authorized representative, has made a good faith effort to reach agreement with the Mortgagor to renegotiate the terms of the Mortgage in an effort to avoid foreclosure. The Mortgagee's good faith is evidenced by the following factors [check all applicable boxes]:

☑ Mortgagee provided the Notice of Mediation Conference to the Mortgagor as required by R.I. Gen. Laws § 34-27-3.2.

☐ Mortgagee designated an agent authorized to participate in the Mediation Conference on its behalf, and with authority to agree to a Workout Agreement on behalf of Mortgagee.

☐ Mortgagee made reasonable efforts to respond in a timely manner to requests for information from the Mediation Coordinator, Mortgagor, or counselor assisting the Mortgagor.

☐ Mortgagee analyzed and responded to the Workout Agreement submitted by the Mortgagor and/or Mediation Coordinator within fourteen days of the Workout Agreement.

☐ If the Mortgagee declines to accept the Mortgagor's Workout Agreement, the Mortgagee provided written, detailed statement of its reasons for rejecting the proposal within fourteen (14) days.

☐ If the Mortgagee declines to accept the Mortgagor's Workout Agreement, the Mortgagee offered, in writing within fourteen (14) days, to enter into an alternative work-out/disposition resolution proposal that would result in a material net financial benefit to the Mortgagor as compared to the terms of the Mortgage.

☐ Other facts demonstrating Mortgagee's good-faith [please specify]:

_____

_____

_____

_____

_____

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

# EXHIBIT E

Case Number: PC-2018-4202
Filed in Providence/Bristol County Superior Court
Submitted: 5/8/2018 2:28 PM
Envelope: 2057055
Reviewer: Lori Lombardi



# KORDE & ASSOCIATES, P.C.

## ATTORNEYS AT LAW

SERVING MASSACHUSETTS, NEW HAMPSHIRE, & RHODE ISLAND

August 15, 2018 

### NOTICE OF TERMINATION OF TENANCY

To:     Ryan M. Cordeiro, Ashley Cordeiro, John Doe and Jane Doe
        38 Rock Street, Tiverton, Rhode Island 02878

On July 24, 2018, Carrington Mortgage Services, LLC became the Owner of the premises you are currently occupying as the result of a foreclosure sale held on June 28, 2018. On August 6, 2018 the foreclosure deed was recorded.

You are hereby directed to vacate and remove your property and personal possessions from the premises located at 38 Rock Street, Tiverton, Rhode Island 02878 and deliver control of the premises to the Owner on October 1, 2018.

This notice is given for the purpose of terminating your tenancy. Please be advised that should a Court action be necessary, the Owner will ask the Court to award damages for use and occupancy in an amount to be determined by the Court.

If you fail to vacate the premises by the date specified, an eviction action may be instituted against you without further notice. If you believe that you have a defense to this termination of your tenancy, you will be able to raise that defense at the Court hearing.

Carrington Mortgage Services, LLC.
Owner
By its Attorney,

_____, Esq.
Paul Manning, Jr.

### Certification of Service

I certify that I placed in regular United States Mail, first class postage prepaid, a copy of this Notice addressed to each of the Occupants named above, this 15th day of August 2018.

_____ Paralegal
Kevin Freitas

900 CHELMSFORD STREET, SUITE 3102, LOWELL, MASSACHUSETTS 01851
PHONE: 978-256-1500 / FAX: 978-256-7615
HOURS OF OPERATION: 8:30AM – 5:30PM, EST MONDAY THRU FRIDAY

Case Number: KC-2019-0492
Filed in 2nd Division District Court
Submitted: 5/8/2018 2:28 PM
Envelope: 2062008
Reviewer: Dennis Rbardi

**IMPORTANT NOTICE TO SERVICEMEMBERS AND THEIR DEPENDENTS:
PROTECTIONS UNDER THE SERVICEMEMBERS CIVIL RELIEF ACT**

If you are a servicemember on "active duty" or "active service" or a dependent of such a servicemember, you may be entitled to certain legal rights and protections, including protection from eviction, pursuant to the Servicemembers Civil Relief Act (50 USC §§ 501-596), as amended, (the "SCRA") and, possibly, certain related state statutes. Eligible service can include:

1. Active duty (as defined in section 101(d)(1) of title 10, United States Code) with the Army, Navy, Air Force, Marine Corps or Coast Guard;

2. Active service with the National Guard;

3. Active service as a commissioned officer of the National Oceanic and Atmospheric Administration;

4. Active service as a commissioned officer of the Public Health Service; or

5. Service with the forces of a nation with which the United States is allied in the prosecution of a war or military action.

Eligible service also includes any period during which a servicemember is absent from duty on account of sickness, wounds, leave or other lawful cause.

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

# EXHIBIT F

Case Number: KC-2019-0495
Filed in Newport County Superior Court
Filed in 2nd Division District Court
Submitted: 10/04/2018 2:26 PM
Envelope: 2042709
Reviewer: Lyn Lombardi

## STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

NEWPORT COUNTY                                        **DISTRICT COURT**
                                                     **SECOND DIVISION**

**CARRINGTON MORTGAGE
SERVICES, LLC**

             **PLAINTIFF,**                    Case No. : _____

v.                                                   **Complaint for Eviction of Tenant By
                                                     Sufferance**

**RYAN M. CORDEIRO, ASHLEY
CORDEIRO, JOHN DOE AND JANE
DOE,**

             **DEFENDANTS.**
_____/

Pursuant to R.I. Gen. Laws § 34-18-37 and § 34-18-38.2(e), Carrington Mortgage Services, LLC,

brings this action for eviction of the Defendants who are tenants by sufferance and as grounds

therefore, alleges as follows:

### Parties

1. Plaintiff, Carrington Mortgage Services, LLC, place of business is located at 1600 South

   Douglass Road, Suite 200-A, Anaheim, CA, 92806.

2. Defendants, Ryan M. Cordeiro and Ashley Cordeiro, are individuals who currently reside

   at 38 Rock Street, Tiverton, Rhode Island 02878.

3. Defendants, John Doe and Jane Doe, are unknown individuals who may currently reside

   at 38 Rock Street, Tiverton, Rhode Island 02878.

### Facts

4. On July 24, 2018, Plaintiff became the owner of the property located at 38 Rock Street,

   Tiverton, Rhode Island 02878 (the Property) by virtue of the execution and delivery of a

1

Case Number: KC-2019-0495
Case Number: KC-2018-0122
Filed in 2nd Division District Court
Submitted: 10/22/2018 2:26 PM
Envelope: 1747005
Reviewer: Lyn Lombardi

Statutory Form of Foreclosure Deed Under Power of Sale in Mortgage. Said Foreclosure
Deed was subsequently recorded with the Town of Tiverton Land Evidence Records on
August 6, 2018, in Book 1686, Page 44. A true and accurate copy of said Foreclosure
Deed is attached hereto as Exhibit 1.

5.   On August 15, 2018, Plaintiff served upon Defendants, Ryan M. Cordeiro, Ashley
Cordeiro, John Doe and Jane Doe, a Notice of Termination of Tenancy By Sufferance
pursuant to R.I. Gen. Laws § 34-18-37(a), § 34-18-56(c) and § 34-18-38.2(e) requiring
said Defendants to vacate the Property and surrender possession thereof on or before
October 1, 2018. A true and accurate copy of said Notice of Termination of Tenancy By
Sufferance is attached hereto as Exhibit 2.

6.   At all times material hereto Defendant Ryan M. Cordeiro was the former owner of the
Property whose interest was foreclosed. Defendant Ashley Cordeiro is believed to be the
spouse of Ryan M. Cordeiro. The named Defendants are not entitled to the protections of
R.I. Gen. Laws § 34-18.38.2 since they are neither bona fide tenants nor do they have a
bona fide lease as defined thereunder.

7.   As of the filing of this Complaint, Defendants have failed to vacate the Property and
surrender possession thereof to Plaintiff.

**Prayer For Relief**

WHEREFORE, Plaintiff prays for judgment against all Defendants as follows:

1.   That judgment for possession of the Property be entered in favor of Plaintiff and against
all Defendants;

2

Case Number: KC-2019-0495
Case Number: KC-2019-0495
Filed in 2nd Division District Court
Submitted: 10/8/2018 2:26 PM
Envelope: 1747005
Reviewer: Lyn Lombardi

2. That Plaintiff be award money damages for use and occupancy from July 24, 2018, to the date of final hearing on this matter;

3. That Plaintiff be awarded its costs of suit herein;

4. That Plaintiff be awarded its reasonable attorneys' fees and,

5. For such other and further relief that the Court deems just and proper.

Dated:  October 8, 2018                    Respectfully submitted,

                                           Carrington Mortgage Services, LLC,
                                           Plaintiff,

                                           By its attorney,

                                           /s/ Paul G. Manning, Jr., Esq.
                                           Paul G. Manning, Jr., Esq.,  RI Bar # 7124
                                           Korde & Associates, P.C.
                                           900 Chelmsford Street, Suite 3102
                                           Lowell, MA 01851-8100
                                           (978) 256-1500
                                           pmanning@kordeassociates.com

Date Complaint filed with the Clerk:   October 8, 2018

3

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

# EXHIBIT G

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R. B. Ennis Esq.

1200 RESERVOIR AVE
CRANSTON RI 02920-6012

US POSTAGE AND FEES PAID
**FIRST-CLASS**
Nov 26 2018
Mailed from ZIP 02920
1 oz First-Class Mail Letter



071S00777793

**USPS CERTIFIED MAIL**



**9407 1108 9876 5022 2303 65**

Carrington Mortgage Services, LLC
Carrington Mortgage Services, LLC
PO BOX 5001
SUITE 201
WESTFIELD IN 46074-5001

CORDEIRO, RYAN- 4000322309 RFI TILA

**FOLD ALONG THIS LINE**

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

# John B. Ennis

*Attorney at Law*

**1200 Reservoir Avenue**
**Cranston, Rhode Island 02920**

Tel. (401) 943-9230                                          Fax (401) 679-0035

November 25, 2018
Carrington Mortgage Services, LLC
P.O. Box 5001
Westfield, IN 46074

Client:  Ryan Cordeiro
Address:  38 Rock Street
Tiverton, RI 02878
Account No.

**Re: Request for Information Pursuant to Section 15 USC 1641(f)**

Dear Sir or Madam:

This is a Request for Information relating to your servicing of the mortgage loan of the above-named client. All references herein are to the Truth In Lending Act ("TILA").  The written authority of the client to my law firm for this Request is attached hereto and incorporated herein by this reference. This request is being made pursuant to the provisions of the Truth in Lending Act, 15 USC 1641(f), which provides:

(f) Treatment of servicer
(1) In general
A servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as an assignee of such obligation for purposes of this section unless the servicer is or was the owner of the obligation.
(2) Servicer not treated as owner on basis of assignment for administrative convenience
A servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as the owner of the obligation for purposes of this section on the basis of an assignment of the obligation from the creditor or another assignee to the servicer solely for the administrative convenience of the servicer in servicing the obligation. Upon written request by the obligor, the servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation.
(3) "Servicer" defined
For purposes of this subsection, the term "servicer" has the same meaning as in section 2605 (i)(2) of title 12.
(4) Applicability
This subsection shall apply to all consumer credit transactions in existence or consummated on or after September 30, 1995.

**Pursuant to TILA, you must respond no later than ten (10) days (excluding legal public holidays, Saturdays and Sundays) after you receive this request for information. Please provide the following information within the time periods noted herein:**

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

1. The identity of and address for the current owner of the mortgage loan identified herein.

2. The identity of and address for the master servicer of the mortgage loan identified herein.

3. The identity of and address for the current servicer of the mortgage loan identified herein.

You received this request on June 23, 2018 and did not respond within ten business days of receipt.


Sincerely,

John B. Ennis, Esq.

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

# EXHIBIT H

Case Number KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Denise M.

USPS.com® - USPS Tracking® Results

# USPS Tracking®

**FAQs** ❭ (https://www.usps.com/faqs/uspstracking-faqs.htm)

## Track Another Package +

**Tracking Number:** 9407110898765022230365

Remove ✕

Your item was picked up at a postal facility at 12:31 pm on December 3, 2018 in WESTFIELD, IN 46074.

⊘ **Delivered**

December 3, 2018 at 12:31 pm
Delivered, Individual Picked Up at Postal Facility
WESTFIELD, IN 46074



Feedback

---

### Tracking History  ⌃

**December 3, 2018, 12:31 pm**
Delivered, Individual Picked Up at Postal Facility
WESTFIELD, IN 46074
Your item was picked up at a postal facility at 12:31 pm on December 3, 2018 in WESTFIELD, IN 46074.

**December 1, 2018, 2:53 pm**
Arrived at Unit
WESTFIELD, IN 46074

**November 30, 2018, 11:35 am**
Available for Pickup
WESTFIELD, IN 46074

**November 30, 2018, 11:15 am**
Sorting Complete
WESTFIELD, IN 46074

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/30/2019
Envelope: 2052810
Reviewer: Denise P.

USPS.com® - USPS Tracking® Results

**November 29, 2018, 11:28 pm**
Departed USPS Regional Destination Facility
INDIANAPOLIS IN DISTRIBUTION CENTER

**November 29, 2018, 11:07 am**
Arrived at USPS Regional Destination Facility
INDIANAPOLIS IN DISTRIBUTION CENTER

**November 28, 2018**
In Transit to Next Facility

**November 27, 2018, 9:05 pm**
Departed USPS Regional Origin Facility
PROVIDENCE RI DISTRIBUTION CENTER

**November 27, 2018, 7:59 pm**
Arrived at USPS Regional Origin Facility
PROVIDENCE RI DISTRIBUTION CENTER

**November 27, 2018, 6:44 pm**
Accepted at USPS Origin Facility
CRANSTON, RI 02920

**November 26, 2018, 5:10 pm**
Shipping Label Created, USPS Awaiting Item
CRANSTON, RI 02920

Feedback

**Product Information** ∨

See Less ∧

# Can't find what you're looking for?

Go to our FAQs section to find answers to your tracking questions.

Case 4/28/2019KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

USPS.com® - USPS Tracking® Results

**FAQs (https://www.usps.com/faqs/uspstracking-faqs.htm)**

Feedback

**The easiest tracking number is the one you don't have to know.**

With Informed Delivery®, you never have to type in another tracking number. Sign up to:

- See images* of incoming mail.

- Automatically track the packages you're expecting.

- Set up email and text alerts so you don't need to enter tracking numbers.

- Enter USPS Delivery Instructions™ for your mail carrier.

**Sign Up**

**(https://reg.usps.com/entreg/RegistrationAction_input?**

*NOTE: Black and white (grayscale) images show the outside, front of letter-sized envelopes and mailpieces that are processed through USPS automated equipment. app=UspsTools&appURL=https%3A%2F%2Ftools.usps.com%2Fgo

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

# EXHIBIT I

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.



**CARRINGTON**
MORTGAGE SERVICES, LLC

P.O. Box 5001, Westfield, IN 46074
Phone(800) 561-4567 Fax (800) 486-5134

CS395

12/07/18

John B. Ennis Attorney At Law
Attn: John B. Ennis, Esq.
1200 Reservoir Avenue
Cranston, RI 02920

RE: CMS Loan Number:

    Borrower(s):     RYAN M CORDEIRO
    Property Address:  38 ROCK ST
                 TIVERTON     RI 02878

Dear Mr. Ennis

The Customer Service Research Department of Carrington Mortgage Services, LLC ("CMS") is in receipt of an inquiry received in our office on 12/04/18. We are currently researching the issue(s) addressed in the inquiry and we anticipate a response on or before 01/16/19.

Our records indicate the current investor/note holder of the loan is CARRINGTON MORTGAGE SERVICES, LLC. CMS is the current servicer of this loan on behalf of the investor/trustee and the investor/holder may be contacted through CMS at PO Box 5001, Westfield, IN 46074, Fax (800) 486-5134, or by telephone at (800) 561-4567.

CMS is committed to customer satisfaction, and we appreciate your patience while we process your correspondence received in our office. Should you have any questions, please contact Carrington Mortgage Services, LLC at (800) 561-4567, Monday through Friday, 8:00 AM to 8:00 PM, Eastern Standard Time. You may also contact us in writing at P.O. Box 5001, Westfield, IN 46074 or Fax (800) 486-5134.

Sincerely,

Customer Service Research Department
Carrington Mortgage Services, LLC

CS395

Page 1 of 1

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052610
Reviewer: Dennis R.

# CARRINGTON
## MORTGAGE SERVICES, LLC

NMLS ID #2600

**IMPORTANT DISCLOSURES**

**-VERBAL INQUIRIES & COMPLAINTS-**
For verbal inquiries and complaints about your mortgage loan, please contact the Customer Service Department for Carrington Mortgage Services, LLC, at 1-800-561-4567 between 8:00 a.m. to 8:00 p.m. Eastern Time, Monday through Friday. You may also visit our website at https://carringtonms.com/.

**-IMPORTANT BANKRUPTCY NOTICE-**
If you have been discharged from personal liability on the mortgage because of bankruptcy proceedings and have not reaffirmed the mortgage, or if you are the subject of a pending bankruptcy proceeding, this letter is not an attempt to collect a debt from you but merely provides informational notice regarding the status of the loan. If you are represented by an attorney with respect to your mortgage, please forward this document to your attorney.

**-CREDIT REPORTING-**
We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report. As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

**-MINI MIRANDA-**
This communication is from a debt collector and it is for the purpose of collecting a debt and any information obtained will be used for that purpose. This notice is required by the provisions of the Fair Debt Collection Practices Act and does not imply that we are attempting to collect money from anyone who has discharged the debt under the bankruptcy laws of the United States.

**-HUD COUNSELOR INFORMATION-**
If you would like counseling or assistance, you may obtain a list of HUD-approved homeownership counselors or counseling organizations in your area by calling the HUD nationwide toll-free telephone number at (800) 569-4287 or toll-free TDD (800) 877-8339, or by going to http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm. You can also contact the CFPB at (855) 411-2372, or by going to www.consumerfinance.gov/find-a-housing-counselor.

**-EQUAL CREDIT OPPORTUNITY ACT NOTICE-**
The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, or age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has, in good faith, exercised any right under the Consumer Credit Protection Act. The Federal Agency that administers CMS' compliance with this law is the Federal Trade Commission, Equal Credit Opportunity, Washington, DC 20580.

**-SCRA DISCLOSURE-**

**MILITARY PERSONNEL/SERVICEMEMBERS:** If you or your spouse is a member of the military, please contact us immediately. The federal Servicemembers Civil Relief Act and comparable state laws afford significant protections and benefits to eligible military service personnel, including protections from foreclosure as well as interest rate relief. For additional information and to determine eligibility please contact our Military Assistance Team toll free at 1-888-267-5474.

**-NOTICES OF ERROR AND INFORMATION REQUESTS, QUALIFIED WRITTEN REQUESTS (QWR)-**
Written complaints and inquiries classified as Notices of Error and Information Requests or QWRs must be submitted to Carrington Mortgage Services, LLC by fax to 800-486-5134, or in writing to Carrington Mortgage Services, LLC, and Attention: Customer Service, P.O. Box 5001, Westfield, IN 46074. Please include your loan number on all pages of the correspondence. You have the right to request documents we relied upon in reaching our determination. You may request such documents or receive further assistance by contacting the Customer Service Department for Carrington Mortgage Services, LLC toll free at (800) 561-4567, Monday through Friday, 8:00 a.m. to 8:00 p.m. Eastern Time. You may also visit our website at https://carringtonms.com/.

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052830
Reviewer: Dennis R.

**CARRINGTON**
MORTGAGE SERVICES, LLC
NMLS ID #2600

**IMPORTANT DISCLOSURES**

**COLORADO Residents Only:** 7200 S. Alton Way, Ste B180, Centennial, CO 80112, (303) 708-8795

**HAWAII Residents Only:** Carrington Mortgage Services, LLC ("CMS") is licensed with the State of Hawaii Division of Financial Institutions. You may file complaints about CMS with the Commissioner of Financial Institutions by calling (808) 586-2820 or visiting the division's website for consumer complaints at http://cca.hawaii.gov/dfi/file-a-complaint/. For a list of standard or common loan servicing fees charged by CMS, please visit the CMS website at https://carringtonms.com/HelpCenter/FAQ

**MASSACHUSETTS: NOTICE OF IMPORTANT RIGHTS**
YOU HAVE THE RIGHT TO MAKE A WRITTEN OR ORAL REQUEST THAT TELEPHONE CALLS REGARDING YOUR DEBT NOT BE MADE TO YOU AT YOUR PLACE OF EMPLOYMENT. ANY SUCH ORAL REQUEST WILL BE VALID FOR ONLY TEN DAYS UNLESS YOU PROVIDE WRITTEN CONFIRMATION OF THE REQUEST POSTMARKED OR DELIVERED WITHIN SEVEN DAYS OF SUCH REQUEST. YOU MAY TERMINATE THIS REQUEST BY WRITING TO THE CREDITOR.

**MINNESOTA:** Carrington Mortgage Services, LLC is licensed by the Minnesota Department of Commerce.

**NEW YORK:**
New York City Department of Consumer Affairs Debt Collection Agency License Numbers: 1264739-DCA; 2027784-DCA; 2027786-DCA & 2057938-DCA
This Collection agency is licensed by the City of Buffalo license numbers: 555177; 555176 &10033598
City of Yonkers Debt Collection Agency License Numbers: 10007; 9717; 9837 & 9826
**For New York Residents Only:** You may file complaints about CMS with the New York State Department of Financial Services. You may obtain further information from the New York State Department of Financial Services by calling the Department's Consumer Assistance Unit at 1-800-342-3736 or by visiting the Department's website at www.dfs.ny.gov. Carrington Mortgage Services, LLC is registered with the Superintendent of the New York State Department of Financial Services.

**NORTH CAROLINA:** Carrington Mortgage Services, LLC is licensed under North Carolina Secure and Fair Enforcement Mortgage Licensing Act and holds North Carolina Agency Licenses with Permit Nos. 102107, 103455 and 112956 Main Office: 1600 South Douglass Road, Suites 110 & 200-A, Anaheim, CA 92806 / Branch Offices: 2100 E. 196th Street, Suites 100 & 200, Westfield, IN 46074 & 6200 Tennyson Parkway, Suite 210, Plano, TX 75024.

**OREGON:** Residential mortgage loan servicers are regulated by the Oregon Division of Financial Regulation. To file a complaint, call (866) 814-9710 or visit http://dfr.oregon.gov.

**TENNESSEE:** This collection agency is licensed by the Collection Service Board of the Department of Commerce and Insurance.

**TEXAS:** Notice to Texas Residents: COMPLAINTS REGARDING THE SERVICING OF YOUR MORTGAGE SHOULD BE SENT TO THE TEXAS DEPARTMENT OF SAVINGS AND MORTGAGE LENDING, 2601 NORTH LAMAR, SUITE 201, AUSTIN, TEXAS 78705. A TOLL-FREE CONSUMER HOTLINE IS AVAILABLE AT 1-877-276-5550. A complaint form and instructions may be downloaded and printed from the Department's website located at www.sml.texas.gov or obtained from the department upon request by mail at the address above, by telephone at its toll-free consumer hotline listed above, or by email at smlinfo@sml.texas.gov.

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

# EXHIBIT J

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

# John B. Ennis

*Attorney at Law*

## 1200 Reservoir Avenue
### Cranston, Rhode Island 02920

Tel. (401) 943-9230                                                   Fax (401) 679-0035

January 19, 2019
Carrington Mortgage Services, LLC
P.O. Box 5001
Westfield, IN 46074

Client:  Ryan Cordeiro
Address:  38 Rock Street
Tiverton, RI 02878
Account No.

Dear Sir or Madam:

Please consider this letter to constitute a Notice of Error under 12 CFR Section 1024.35 of
Regulation X of the Mortgage Servicing Act under RESPA, which Regulation became effective
on January 10, 2014. These amendments implemented the Dodd-Frank Wall Street Reform and
Consumer Protection Act provisions regarding mortgage loan servicing. Under these
amendments, you must acknowledge receipt of this Notice within five (5) days thereof
(excluding legal public holidays, Saturdays and Sundays) and must advise me of your responses
to this notice within thirty (30) days of receipt thereof (excluding legal public holidays,
Saturdays and Sundays).

The written authority of the client to my law firm for this Request is attached hereto and
incorporated herein by this reference.

Under Section 1024.35(b) of Amended Regulation X, the term "error" means the following
categories of covered errors:

(1) Failure to accept a payment that conforms to the servicer's written requirements for the
borrower to follow in making payments.
(2) Failure to apply an accepted payment to principal, interest, escrow, or other charges under the
terms of the mortgage loan and applicable law.
(3) Failure to credit a payment to a borrower's mortgage loan account as of the date of receipt, in
violation of the prompt crediting provisions in 12 CFR 1026.36(c)(1).
(4) Failure to pay taxes, insurance premiums, or other charges, including charges that the
consumer has voluntarily agreed that the servicer should collect and pay, in a timely manner as
required by the escrow provisions of § 1024.34(a), or to refund an escrow account balance as
required by § 1024.34(b).
(5) Imposition of a fee or charge that the servicer lacks a reasonable basis to impose upon the
consumer, which includes, for example, a late fee for a payment that was not late, a charge you
imposed for a service that was not provided, a default property-management fee for consumers

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

who are not in a delinquency status that would justify the charge, or a charge for force-placed insurance provisions.

(6) Failure to provide an accurate payoff balance amount upon a borrower's request pursuant to 12 CFR 1026.36(c)(3).

(7) Failure to provide accurate information to a borrower for loss mitigation options and foreclosure, as required by the early intervention provisions of § 1024.39.

(8) Failure to accurately and timely transfer information relating to the servicing of a borrower's mortgage loan account to a transferee servicer.

(9) Making the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process in violation of the loss mitigation procedures of § 1024.41(f) or (j).

(10) Moving for foreclosure judgment or order of sale, or conduction a foreclosure sale in violation of the loss mitigation procedures of this rule § 1024.41(g) or (j).

(11) Any other error relating to the servicing of the consumer's mortgage loan.  Please note "servicing" is defined in § 1024.2(b).

**The consumer  believes that you have committed error by mailing a Notice of Sale, purportedly conducting a foreclosure sale, recording a foreclosure deed and seeking to evict the consumer without first sending the consumer a default notice and acceleration as required by HUD regulations and by charging the consumer's mortgage loan account for all legal fees relating to foreclosure, and all foreclosure fees and costs due to the following:**

**This loan is a FHA loan. The terms of the mortgage incorporate the HUD Regulations  and no face to face meeting occurred prior to default and acceleration as required by  HUD Regulations. The consumer was not advised of all loss mitigation options prior to acceleration of the mortgage loan.  As a result all fees and costs relating to any foreclosure should be removed from the mortgage loan account and the foreclosure deed should be rescinded.**

Please correct all of these errors and provide me with notification of the correction, the date of the correction, and contact information for further assistance; or after conducting a reasonable investigation and providing the borrower through my firm with a notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information for further assistance.

Please be advised that for 60 days after receipt of a Notice of Error, you may not furnish adverse information to any consumer reporting agency regarding any payment that is the subject of the Notice of Error pursuant to § 1024.35(i).

Sincerely,

John B. Ennis, Esq.

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

# EXHIBIT K

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Debra B.

USPS.com® - USPS Tracking® Results

# USPS Tracking®

FAQs › (https://www.usps.com/faqs/uspstracking-faqs.htm)

## Track Another Package  +

**Tracking Number:** 9407110898765026069930                    Remove ✕

**Expected Delivery on**

## THURSDAY

# 24 | JANUARY | by
2019 ⓘ | **8:00pm** ⓘ

## ⊘ Delivered

January 24, 2019 at 10:12 am
Delivered
WESTFIELD, IN 46074

Feedback

### Tracking History                                            ∧

**January 24, 2019, 10:12 am**
Delivered
WESTFIELD, IN 46074
Your item was delivered at 10:12 am on January 24, 2019 in WESTFIELD, IN 46074.

**January 24, 2019, 9:16 am**
Arrived at Unit
WESTFIELD, IN 46074

**January 24, 2019, 3:01 am**
Departed USPS Regional Destination Facility
INDIANAPOLIS IN DISTRIBUTION CENTER

Case #26/2019KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/22/2019 1:35 pm
Envelope: 2052810
Reviewer: Dennis R.

USPS.com® - USPS Tracking® Results

**January 23, 2019, 1:35 pm**
Arrived at USPS Regional Destination Facility
INDIANAPOLIS IN DISTRIBUTION CENTER

**January 23, 2019**
In Transit to Next Facility

**January 19, 2019, 11:37 pm**
Departed USPS Regional Origin Facility
BOSTON MA DISTRIBUTION CENTER

**January 19, 2019, 10:37 pm**
Arrived at USPS Regional Origin Facility
BOSTON MA DISTRIBUTION CENTER

**January 19, 2019, 9:22 pm**
Accepted at USPS Origin Facility
CRANSTON, RI 02920

**January 19, 2019, 11:02 am**
Shipping Label Created, USPS Awaiting Item
CRANSTON, RI 02920

**Product Information**  ⌄

Feedback

See Less ⌃

## Can't find what you're looking for?

Go to our FAQs section to find answers to your tracking questions.

**FAQs (https://www.usps.com/faqs/uspstracking-faqs.htm)**

Case 4/26/2019 KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

USPS.com® - USPS Tracking® Results

**The easiest tracking number is the one you don't have to know.**

With Informed Delivery®, you never have to type in another tracking number. Sign up to:

- See images* of incoming mail.

- Automatically track the packages you're expecting.

- Set up email and text alerts so you don't need to enter tracking numbers.

- Enter USPS Delivery Instructions™ for your mail carrier.

**Sign Up**

**(https://reg.usps.com/entreg/RegistrationAction_input?**

*NOTE: Black and white (grayscale) images show the outside, front of letter-sized envelopes and
mailpieces that are processed through USPS automated equipment.app=UspsTools&appURL=https%3A%2F%2Ftools.usps.com%2Fgo

Feedback

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

# EXHIBIT L

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Denise B. Ennis Esq.
1200 RESERVOIR AVE
CRANSTON RI 02920-6012



US POSTAGE AND FEES PAID
**FIRST-CLASS**
Jan 19 2019
Mailed from ZIP 02920
2 oz First-Class Mail Letter

071S00777793



**USPS CERTIFIED MAIL**

9407 1108 9876 5026 0699 47

Carrington Mortgage Services, LLC
Carrington Mortgage Services, LLC
PO BOX 5001
SUITE 201
WESTFIELD IN 46074-5001

FOLD ALONG THIS LINE

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

# John B. Ennis

*Attorney at Law*

**1200 Reservoir Avenue**
**Cranston, Rhode Island 02920**

Tel. (401) 943-9230                                                             Fax (401) 679-0035

January 19, 2019
Carrington Mortgage Services, LLC
P.O. Box 5001
Westfield, IN 46074

Client: Ryan Cordeiro
Address: 38 Rock Street
Tiverton, RI 02878
Account No.

Dear Sir or Madam:

Please consider this letter to constitute a Notice of Error under 12 CFR Section 1024.35 of
Regulation X of the Mortgage Servicing Act under RESPA, which Regulation became effective
on January 10, 2014. These amendments implemented the Dodd-Frank Wall Street Reform and
Consumer Protection Act provisions regarding mortgage loan servicing. Under these
amendments, you must acknowledge receipt of this Notice within five (5) days thereof
(excluding legal public holidays, Saturdays and Sundays) and must advise me of your responses
to this notice within thirty (30) days of receipt thereof (excluding legal public holidays,
Saturdays and Sundays).

The written authority of the client to my law firm for this Request is attached hereto and
incorporated herein by this reference.

Under Section 1024.35(b) of Amended Regulation X, the term "error" means the following
categories of covered errors:

(1) Failure to accept a payment that conforms to the servicer's written requirements for the
borrower to follow in making payments.
(2) Failure to apply an accepted payment to principal, interest, escrow, or other charges under the
terms of the mortgage loan and applicable law.
(3) Failure to credit a payment to a borrower's mortgage loan account as of the date of receipt, in
violation of the prompt crediting provisions in 12 CFR 1026.36(c)(1).
(4) Failure to pay taxes, insurance premiums, or other charges, including charges that the
consumer has voluntarily agreed that the servicer should collect and pay, in a timely manner as
required by the escrow provisions of § 1024.34(a), or to refund an escrow account balance as
required by § 1024.34(b).
(5) Imposition of a fee or charge that the servicer lacks a reasonable basis to impose upon the
consumer, which includes, for example, a late fee for a payment that was not late, a charge you
imposed for a service that was not provided, a default property-management fee for consumers

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

who are not in a delinquency status that would justify the charge. or a charge for force-placed insurance provisions.

(6) Failure to provide an accurate payoff balance amount upon a borrower's request pursuant to 12 CFR 1026.36(c)(3).

(7) Failure to provide accurate information to a borrower for loss mitigation options and foreclosure, as required by the early intervention provisions of § 1024.39.

(8) Failure to accurately and timely transfer information relating to the servicing of a borrower's mortgage loan account to a transferee servicer.

(9) Making the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process in violation of the loss mitigation procedures of § 1024.41(f) or (j).

(10) Moving for foreclosure judgment or order of sale, or conduction a foreclosure sale in violation of the loss mitigation procedures of this rule § 1024.41(g) or (j).

(11) Any other error relating to the servicing of the consumer's mortgage loan.  Please note "servicing" is defined in § 1024.2(b).

**The consumer  believes that you have committed error by not responding to a Request for Information within ten business days of receipt. The Request for Information requested the following information:**


**1.   The identity of and address for the current owner of the mortgage note identified herein.**
**2.   The identity of and address for the master servicer of the mortgage loan identified herein.**
**3.   The identity of and address for the current servicer of the mortgage loan identified herein.**
**4.   The identity of and address for the current holder of the mortgage note identified herein.**


**You received this Request for Information on December 3, 2018. In your response dated December 7, 2018 you committed error by merely stating:**

**The current investor/not holder of the loan.**

**You did not provide the following information:**
**1.   The identity of and address for the current owner of the mortgage note identified herein.**
**2.   The identity of and address for the master servicer of the mortgage loan identified herein.**


Please correct all of these errors and provide me with notification of the correction, the date of the correction, and contact information for further assistance; or after conducting a reasonable investigation and providing the borrower through my firm with a notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information for further assistance.

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis B.

Please be advised that for 60 days after receipt of a Notice of Error, you may not furnish adverse information to any consumer reporting agency regarding any payment that is the subject of the Notice of Error pursuant to § 1024.35(i).

Sincerely,

John B. Ennis, Esq.

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.



**CARRINGTON**
MORTGAGE SERVICES, LLC

P.O. Box 5001, Westfield, IN 46074
Phone(800) 561-4567 Fax (800) 486-5134

CS395

12/07/18

John B. Ennis Attorney At Law
Attn: John B. Ennis, Esq.
1200 Reservoir Avenue
Cranston, RI 02920

RE: CMS Loan Number:

| Borrower(s): | RYAN M CORDEIRO | |
|---|---|---|
| Property Address: | 38 ROCK ST | |
| | TIVERTON | RI 02878 |

Dear Mr. Ennis

The Customer Service Research Department of Carrington Mortgage Services, LLC ("CMS") is in receipt of an inquiry received in our office on 12/04/18. We are currently researching the issue(s) addressed in the inquiry and we anticipate a response on or before 01/16/19.

Our records indicate the current investor/note holder of the loan is CARRINGTON MORTGAGE SERVICES, LLC. CMS is the current servicer of this loan on behalf of the investor/trustee and the investor/holder may be contacted through CMS at PO Box 5001, Westfield, IN 46074, Fax (800) 486-5134, or by telephone at (800) 561-4567.

CMS is committed to customer satisfaction, and we appreciate your patience while we process your correspondence received in our office. Should you have any questions, please contact Carrington Mortgage Services, LLC at (800) 561-4567, Monday through Friday, 8:00 AM to 8:00 PM, Eastern Standard Time. You may also contact us in writing at P.O. Box 5001, Westfield, IN 46074 or Fax (800) 486-5134.

Sincerely,

Customer Service Research Department
Carrington Mortgage Services, LLC

CS395

Page 1 of 1

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052210
Reviewer: Denni...

**CARRINGTON**

MORTGAGE SERVICES, LLC

**IMPORTANT DISCLOSURES**

---

**-VERBAL INQUIRIES & COMPLAINTS-**

For verbal inquiries and complaints about your mortgage loan, please contact the Customer Service Department for Carrington Mortgage Services, LLC, at 1-800-561-4567 between 8:00 a.m. to 8:00 p.m. Eastern Time, Monday through Friday. You may also visit our website at https://carringtonms.com/.

**-IMPORTANT BANKRUPTCY NOTICE-**

If you have been discharged from personal liability on the mortgage because of bankruptcy proceedings and have not reaffirmed the mortgage, or if you are the subject of a pending bankruptcy proceeding, this letter is not an attempt to collect a debt from you but merely provides informational notice regarding the status of the loan. If you are represented by an attorney with respect to your mortgage, please forward this document to your attorney.

**-CREDIT REPORTING-**

We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report. As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

**-MINI MIRANDA-**

This communication is from a debt collector and it is for the purpose of collecting a debt and any information obtained will be used for that purpose. This notice is required by the provisions of the Fair Debt Collection Practices Act and does not imply that we are attempting to collect money from anyone who has discharged the debt under the bankruptcy laws of the United States.

**-HUD COUNSELOR INFORMATION-**

If you would like counseling or assistance, you may obtain a list of HUD-approved homeownership counselors or counseling organizations in your area by calling the HUD nationwide toll-free telephone number at (800) 569-4287 or toll-free TDD (800) 877-8339, or by going to http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm. You can also contact the CFPB at (855) 411-2372, or by going to www.consumerfinance.gov/find-a-housing-counselor.

**-EQUAL CREDIT OPPORTUNITY ACT NOTICE-**

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, or age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has, in good faith, exercised any right under the Consumer Credit Protection Act. The Federal Agency that administers CMS' compliance with this law is the Federal Trade Commission, Equal Credit Opportunity, Washington, DC 20580.

**-SCRA DISCLOSURE-**

**MILITARY PERSONNEL/SERVICEMEMBERS:** If you or your spouse is a member of the military, please contact us immediately. The federal Servicemembers Civil Relief Act and comparable state laws afford significant protections and benefits to <u>eligible</u> military service personnel, including protections from foreclosure as well as interest rate relief. For additional information and to determine eligibility please contact our Military Assistance Team toll free at 1-888-267-5474.

**-NOTICES OF ERROR AND INFORMATION REQUESTS, QUALIFIED WRITTEN REQUESTS (QWR)-**

Written complaints and inquiries classified as Notices of Error and Information Requests or QWRs must be submitted to Carrington Mortgage Services, LLC by fax to 800-486-5134, or in writing to Carrington Mortgage Services, LLC, and Attention: Customer Service, P.O. Box 5001, Westfield, IN 46074. Please include your loan number on all pages of the correspondence. You have the right to request documents we relied upon in reaching our determination. You may request such documents or receive further assistance by contacting the Customer Service Department for Carrington Mortgage Services, LLC toll free at (800) 561-4567, Monday through Friday, 8:00 a.m. to 8:00 p.m. Eastern Time. You may also visit our website at https://carringtonms.com/.

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052010
Reviewer: Denni...

# CARRINGTON

MORGAGE SERVICES, LLC

NMLS #2600

**IMPORTANT DISCLOSURES**

**COLORADO Residents Only:** 7200 S. Alton Way, Ste B180, Centennial, CO 80112, (303) 708-8795

**HAWAII Residents Only: Carrington Mortgage Services, LLC ("CMS") is licensed with the State of Hawaii Division of Financial Institutions. You may file complaints about CMS with the Commissioner of Financial Institutions by calling (808) 586-2820 or visiting the division's website for consumer complaints at http://cca.hawaii.gov/dfi/file-a-complaint/. For a list of standard or common loan servicing fees charged by CMS, please visit the CMS website at https://carringtonms.com/HelpCenter/FAQ**

**MASSACHUSETTS: NOTICE OF IMPORTANT RIGHTS**
**YOU HAVE THE RIGHT TO MAKE A WRITTEN OR ORAL REQUEST THAT TELEPHONE CALLS REGARDING YOUR DEBT NOT BE MADE TO YOU AT YOUR PLACE OF EMPLOYMENT. ANY SUCH ORAL REQUEST WILL BE VALID FOR ONLY TEN DAYS UNLESS YOU PROVIDE WRITTEN CONFIRMATION OF THE REQUEST POSTMARKED OR DELIVERED WITHIN SEVEN DAYS OF SUCH REQUEST. YOU MAY TERMINATE THIS REQUEST BY WRITING TO THE CREDITOR.**

**MINNESOTA:** Carrington Mortgage Services, LLC is licensed by the Minnesota Department of Commerce.

**NEW YORK:**
New York City Department of Consumer Affairs Debt Collection Agency License Numbers: 1264739-DCA; 2027784-DCA; 2027786-DCA & 2057938-DCA
This Collection agency is licensed by the City of Buffalo license numbers: 555177; 555176 &10033598
City of Yonkers Debt Collection Agency License Numbers: 10007; 9717; 9837 & 9826
**For New York Residents Only:** You may file complaints about CMS with the New York State Department of Financial Services. You may obtain further information from the New York State Department of Financial Services by calling the Department's Consumer Assistance Unit at 1-800-342-3736 or by visiting the Department's website at www.dfs.ny.gov. Carrington Mortgage Services, LLC is registered with the Superintendent of the New York State Department of Financial Services.

**NORTH CAROLINA:** Carrington Mortgage Services, LLC is licensed under North Carolina Secure and Fair Enforcement Mortgage Licensing Act and holds North Carolina Agency Licenses with Permit Nos. 102107, 103455 and 112956 Main Office: 1600 South Douglass Road, Suites 110 & 200-A, Anaheim, CA 92806 / Branch Offices: 2100 E. 196th Street, Suites 100 & 200, Westfield, IN 46074 & 6200 Tennyson Parkway, Suite 210, Plano, TX 75024.

**OREGON:** Residential mortgage loan servicers are regulated by the Oregon Division of Financial Regulation. To file a complaint, call (866) 814-9710 or visit http://dfr.oregon.gov.

**TENNESSEE:** This collection agency is licensed by the Collection Service Board of the Department of Commerce and Insurance.

**TEXAS: Notice to Texas Residents: COMPLAINTS REGARDING THE SERVICING OF YOUR MORTGAGE SHOULD BE SENT TO THE TEXAS DEPARTMENT OF SAVINGS AND MORTGAGE LENDING, 2601 NORTH LAMAR, SUITE 201, AUSTIN, TEXAS 78705.** A TOLL-FREE CONSUMER HOTLINE IS AVAILABLE AT 1-877-276-5550. A complaint form and instructions may be downloaded and printed from the Department's website located at www.sml.texas.gov or obtained from the department upon request by mail at the address above, by telephone at its toll-free consumer hotline listed above, or by email at smlinfo@sml.texas.gov.

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

# EXHIBIT M

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewed:

USPS.com® - USPS Tracking® Results

# USPS Tracking®

FAQs ⟩ (https://www.usps.com/faqs/uspstracking-faqs.htm)

## Track Another Package +

**Tracking Number:** 9407110898765026069947                   Remove ✕

**Expected Delivery on**

# THURSDAY
# 24 JANUARY 2019 ⓘ | by **8:00pm** ⓘ

## ⊘ Delivered

January 24, 2019 at 10:12 am
Delivered
WESTFIELD, IN 46074

Feedback

---

### Tracking History                                              ︿

**January 24, 2019, 10:12 am**
Delivered
WESTFIELD, IN 46074
Your item was delivered at 10:12 am on January 24, 2019 in WESTFIELD, IN 46074.

**January 24, 2019, 9:16 am**
Arrived at Unit
WESTFIELD, IN 46074

**January 24, 2019, 3:01 am**
Departed USPS Regional Destination Facility
INDIANAPOLIS IN DISTRIBUTION CENTER

Case Number: KC-2019-0495
Filed in Kent County Superior Court
Submitted: 5/2/2019 7:28 PM
Envelope: 2052810
Reviewer: Dennis R.

USPS.com® - USPS Tracking® Results

**The easiest tracking number is the one you don't have to know.**

With Informed Delivery®, you never have to type in another tracking number. Sign up to:

- See images* of incoming mail.

- Automatically track the packages you're expecting.

- Set up email and text alerts so you don't need to enter tracking numbers.

- Enter USPS Delivery Instructions™ for your mail carrier.

Feedback

**Sign Up**

**(https://reg.usps.com/entreg/RegistrationAction_input?**

*NOTE: Black and white (grayscale) images show the outside, front of letter-sized envelopes and mailpieces that are processed through USPS automated equipment. app=UspsTools&appURL=https%3A%2F%2Ftools.usps.com%2Fgo